Filed 2/15/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| J.H.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>SAN LUIS OBISPO COUNTY,<br><br>    Respondent;<br><br>SAN LUIS OBISPO COUNTY<br>DEPARTMENT OF SOCIAL<br>SERVICES,<br><br>    Real Party in Interest. | 2d Juv. No. B284802<br>(Super. Ct. No. 16JD00154)<br>(San Luis Obispo County) |

In *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*), our Supreme Court clarified the test for admitting expert opinion testimony. Although *Sanchez* was a criminal case, its limitations extend beyond the scope of criminal law: to proceedings under the Sexually Violent Predator Act (*People v. Burroughs* (2016) 6 Cal.App.5th 378), to conservatorship proceedings

(*Conservatorship of K.W.* (2017) 13 Cal.App.5th 1274), to the commitment of mentally disordered offenders (*People v. Bona* (2017) 15 Cal.App.5th 511 (*Bona*)), and to public nuisance actions (*People v. ConAgra Grocery Products Co.* (2017) 17 Cal.App.5th 51).  Here, we hold that *Sanchez*'s limitations do not render social service reports inadmissible in status review hearings held pursuant to the Welfare and Institutions Code.[1]

J.H. petitions for extraordinary writ review of the juvenile court's order terminating reunification services and setting the matter for a permanency plan hearing.  (§ 366.26, subd. (*l*)(1).)  He contends the court erred when it considered a social services report in the absence of its primary author, and thus prevented his cross-examination of her at the 12-month status review hearing.  We deny the petition.

FACTUAL AND PROCEDURAL HISTORY

The San Luis Obispo County Department of Social Services (DSS) detained J.H.'s two daughters, R.H. and N.H., because their stepmother abused them.  At the conclusion of the jurisdiction and disposition hearing, the juvenile court took custody of R.H. and N.H., ordered reunification services for J.H., and recommended anger management classes and therapy.  The court commented that it had "never seen anybody more angry in the courtroom" than J.H.

The three-month report detailed domestic violence between J.H. and his wife, recounted, in part, by R.H.  J.H. said R.H. was lying about the violence in the home.  He also said he was "not interested in cooperating with DSS."

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

J.H. exercised visitation during the subsequent review period, but made minimal progress toward the goals outlined in his case plan. His behavior was "unpredictable" and he was often angry and aggressive toward DSS staff.

The six-month report initially recommended terminating reunification services because J.H. refused to cooperate with DSS and had little insight into the reasons underlying the dependency proceedings. But because he complied with his case plan, a revised report recommended continuing services for another six months. The juvenile court agreed. The new case plan required J.H. to address his anger issues and to act appropriately with DSS staff.

The 12-month report recommended terminating reunification services. J.H. had minimal compliance with his case plan. His visitation attendance declined. His volatile behavior continued. He realized little benefit from the services provided.

Nine days before the review hearing, DSS informed J.H. that the author of the 12-month report, Karen Talbert, would not be available to testify because she no longer worked with DSS. Her former supervisor, Lori Spire, would be available instead. At a pretrial proceeding the day before the hearing, J.H.'s attorney said she had not subpoenaed Talbert. She nevertheless requested Talbert's presence in court.

J.H. was openly hostile during the review hearing. He denied the behavior and statements attributed to him. He admitted he was provoked whenever DSS staff members spoke. He said he did not know what improvements, if any, he had made in his interactions with DSS.

When DSS called Spire to testify, J.H. objected, citing *Sanchez*. The juvenile court ruled that Spire could testify pursuant to the Welfare and Institutions Code and the California Rules of Court. It concluded that *Sanchez* was inapplicable at the hearing.

Spire testified she authored portions of Talbert's report. She spoke with J.H.'s therapists, reviewed visitation logs, and discussed the case with Talbert and other social workers. She personally observed two of J.H.'s visits with his daughters.

Spire opined there was not a substantial probability that R.H. and N.H. would be returned to J.H. within the next six months and that the girls ran a substantial risk of detriment if returned to him. She said counselors told her they did not believe they could help J.H. further with domestic violence issues.

A family therapist testified she did not see evidence of domestic violence between J.H. and his wife. She said J.H.'s visits with his daughters went well. She recommended unsupervised visits for J.H. and continued reunification services. Another therapist concurred.

The juvenile court determined that there was not a substantial probability R.H. and N.H. would be returned to J.H. within the next six months and that there was a substantial risk of detriment to the girls if returned to J.H.'s care. It referred to J.H.'s history of domestic violence, aggression toward DSS workers, and significant levels of depression and anxiety. He was disrespectful in court, and failed to meet the objectives in his case plan. The court terminated reunification services and set the matter for a permanency plan hearing.

4

## DISCUSSION

### *Termination of reunification services*

J.H. contends the juvenile court erred when it found there was not a substantial probability his daughters would be returned to him within the next six months and terminated reunification services.  We disagree.

At the conclusion of a 12-month review hearing, the juvenile court shall continue the case for up to six months if there is a "substantial probability" a child will be returned to a parent's custody.  (§ 366.21, subd. (g)(1).)  A "substantial probability" of reunification requires the court to find that the parent:  regularly contacted and visited the child; "made significant progress in resolving problems that led to the child's removal from the home"; and "demonstrated the capacity and ability both to complete the objectives of [the] treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (*Ibid.*)  We uphold the court's findings if supported by substantial evidence.  (*James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1020.)  We resolve all conflicts in favor of the court's determinations, and indulge all legitimate inferences to uphold its findings. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1649.)

Substantial evidence supports the juvenile court's findings that J.H. neither made significant progress in resolving the problems that led to his daughters' removal from the home nor demonstrated his capacity to complete the objectives of the case plan.  His compliance with the case plan was minimal.  He was hostile toward DSS workers and did not intend to continue to work with them.  He had a history of domestic violence, but denied that he needed therapy to address these issues.  These

5

factors support the court's decision to terminate reunification services. (*In re Mary B.* (2013) 218 Cal.App.4th 1474, 1483-1484 [minimal progress toward addressing anger issues]; *Fabian L. v. Superior Court* (2013) 214 Cal.App.4th 1018, 1029-1030 [failure to address domestic violence issues]; *In re Alanna A.* (2005) 135 Cal.App.4th 555, 566 [marginal participation in reunification services]; *Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763-764 [failure to attend therapy, lack of insight, and denial of problems].)

*Right to cross-examination*

J.H. contends the juvenile court violated his due process right to cross-examine witnesses when it considered the report Talbert authored without permitting him to cross-examine her. We again disagree.

A parent in a dependency proceeding has a due process right to confront and cross-examine witnesses. (*In re Josiah S.* (2002) 102 Cal.App.4th 403, 412.) But due process does not require "full-fledged cross-examination." (*In re Jeanette V.* (1998) 68 Cal.App.4th 811, 817.) Rather, all that is required is """"that the procedure adopted comport with fundamental principles of fairness and decency."""" (*Bona, supra*, 15 Cal.App.5th at p. 520 [standard in civil proceedings].) Due process is a flexible concept that weighs "any possible hardship to the parent [against] the state's legitimate interest in providing an expedited proceeding to resolve the child's status without further delay." (*In re Malinda S.* (1990) 51 Cal.3d 368, 384, superseded by statute on another ground as stated in *People v. Otto* (2001) 26 Cal.4th 200, 207.) We review for abuse of discretion the juvenile court's decision to permit Spire to testify in lieu of Talbert. (*In re Josiah S.*, at p. 412.)

6

There was no abuse of discretion.  Section 281 permits the juvenile court to "receive and consider social service reports in determining 'any matter involving the custody, status, or welfare of a minor.'" (*In re Keyonie R.* (1996) 42 Cal.App.4th 1569, 1572, italics omitted.)  At the 12-month review hearing, the court "shall review and consider" those reports.  (§ 366.21, subd. (f)(1)(C).)  The reports are admissible regardless of whether the authors are available for cross-examination.  (§ 358, subd. (b)(1); see *In re Vincent G.* (2008) 162 Cal.App.4th 238, 243-244 ["'we see no reason to construe section 358, subdivision (b) to require the preparer to testify as a prerequisite to admitting the report'"]; *In re Jeanette V., supra*, 68 Cal.App.4th at p. 816 ["The *right* to cross-examination based upon statute and court rule applies only to the *jurisdictional* hearing"]; *Andrea L. v. Superior Court* (1998) 64 Cal.App.4th 1377, 1387, fn. 3 ["once jurisdiction over a minor has been established, the admissibility of such reports is no longer conditioned on the availability of the author for cross-examination"].)

The juvenile court's consideration of Talbert's report did not violate J.H.'s due process rights.  "In juvenile dependency litigation, due process focuses on the right to notice and the right to be heard."  (*In re Matthew P.* (1999) 71 Cal.App.4th 841, 851.)  J.H. had notice that Talbert would not be available and that Spire would testify instead.  He extensively cross-examined Spire—who authored portions of Talbert's report, discussed the case with her and other social workers, spoke with J.H.'s therapists, and reviewed visitation logs—and had ample opportunity to challenge the report.  That is in stark contrast to dependency cases in which courts have found due process violations.  (See, e.g., *ibid*. [denial of full evidentiary hearing]; *In*

7

*re Jonique W.* (1994) 26 Cal.App.4th 685, 690-694 [de facto parent not permitted to contest removal of dependent children from her custody]; *In re Crystal J.* (1993) 12 Cal.App.4th 407, 412-413 [failure to provide parents with social service reports]; *Katzoff v. Superior Court* (1976) 54 Cal.App.3d 1079, 1084 [denial of de facto parents' request to present evidence contradicting social services reports].) Moreover, when advised that Talbert would not be available at the hearing, he did not subpoena her. That, too, weighs against finding a due process violation. (*In re Malinda S.*, *supra*, 51 Cal.3d at pp. 384-385.)

*Sanchez* is not to the contrary. *Sanchez* holds that "[w]hen any expert relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay." (*Sanchez*, *supra*, 63 Cal.4th at p. 686.) Those statements are inadmissible unless independently proven or covered by a hearsay exception. (*Ibid.*) The Welfare and Institutions Code creates exceptions to the hearsay rule. (See *In re Jeanette V.*, *supra*, 68 Cal.App.4th at p. 816 [section 358, subdivision (b)(1) is exception to hearsay rule]; *In re Keyonie R.*, *supra*, 42 Cal.App.4th at pp. 1571-1573 [section 281 is an exception to the hearsay rule].) Talbert's report was thus admissible hearsay.

*Sanchez* also holds that when an "expert seeks to relate *testimonial* hearsay, there is a confrontation clause violation unless (1) there is a showing of unavailability and (2) the defendant had a prior opportunity for cross-examination, or forfeited that right by wrongdoing." (*Sanchez*, *supra*, 63 Cal.4th at p. 686, original italics.) But that holding does not extend to dependency proceedings: "Although parties in civil proceedings

8

have a right to confrontation under the due process clause, '[t]he Sixth Amendment and due process confrontation rights are not coextensive. [Citation.] Due process in a civil proceeding "is not measured by the rights accorded a defendant in criminal proceedings, but by the standard applicable to civil proceedings." [Citation.]' [Citation.]" (*Bona*, *supra*, 15 Cal.App.5th at p. 520.) This is because "[c]riminal defendants and parents [in dependency proceedings] are *not* similarly situated. By definition, criminal defendants face punishment. Parents do not. [Citation.]" (*In re Sade C.* (1996) 13 Cal.4th 952, 991, original italics.) *Sanchez*'s holding regarding the Sixth Amendment's right to confrontation is inapplicable here. (*In re April C.* (2005) 131 Cal.App.4th 599, 611; see *In re Malinda S.*, *supra*, 51 Cal.3d at p. 383, fn. 16.)

DISPOSITION

We deny the petition for extraordinary writ.

<u>CERTIFIED FOR PUBLICATION.</u>

TANGEMAN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

9

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____

Jennifer Fehlman, for Petitioner.

No appearance for Respondent.

Rita L. Neal, County Counsel, Leslie H. Kraut, Deputy County Counsel, for Real Party in Interest.