Filed 9/17/20  In re E.G. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re E.G. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. Nos. B299851, B301391 (Super. Ct. No. 18JD-00154) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>P.G.,<br><br>    Defendant and Appellant. | |

P.G. (Father) appeals orders of the juvenile court terminating family reunification services and declining to place his children with their paternal grandparents.  (Welf. & Inst.

Code, §§ 366.21, subd. (f), 361.3.)[1]  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

Father and S.G. (Mother) are the parents of three minor children E.G., A.G., and J.G.  Mother and Father are divorced and Father had custody of the children.[2]

On April 30, 2018, Father, his girlfriend, and the three children were involved in a high-speed vehicle rollover accident. When emergency assistance arrived, the two older children were standing outside the vehicle.  Father, his girlfriend, and the youngest child were attempting to escape the vehicle through a window.  The vehicle had a strong odor of alcohol and empty beer cans were inside.  None of the children had been confined in car seats.  Father sustained a broken leg, his girlfriend had a large laceration on her leg, and the children had bruises.  E.G.'s foot also was swollen and lacerated, and she later complained of back pain.

Father claimed that he was driving the vehicle, and his girlfriend, who was found to have a blood alcohol level of 0.179, was a passenger.  Father had no blood alcohol content and had no valid driver's license.  E.G. informed an interviewing police officer, however, that Father's girlfriend was the driver.  Physical evidence inside the vehicle supported E.G.'s statement.

*Jurisdiction and Disposition*

The children were detained in foster care and on May 2, 2018, the San Luis County Department of Social Services (DSS)

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] Mother has not appealed the orders here.  The juvenile court continued family reunification services to her for an additional six months at the 12-month review hearing.

2

filed a dependency petition.  The petition alleged that Father failed to protect the minors from substance abuse and the dangerous behavior of others, and failed to provide adequate care and supervision.  (§ 300, subd. (b).)  At the time, Mother was incarcerated following her conviction of drug trafficking.  (*Id.*, subd. (g).)  A maternal aunt informed the DSS social worker that Father and Mother sold drugs in the children's presence.

The three children were placed together in a licensed foster home.  They had extensive dental decay and reported that they ate sweets and chips in their Father's home because sometimes there was no food.  Father later attempted to visit E.G. at her school and left her cookies and notes, asking her to keep the visit secret.

The DSS jurisdiction and disposition report stated that the children's foster mother informed DSS that the children were reluctant to visit with Father, and E.G. began bedwetting.  DSS referred the children to mental health counseling.

Father missed his initial drug screening appointment.  He also informed DSS that the vehicle accident resulted from a malfunction, and not reckless speed or driving under the influence.  Father reported that he had attended drug and alcohol services and parent education classes, although he could not describe the address or name of the instructors.  The DSS social worker expressed concern that Father was not taking responsibility for his behavior.

The DSS report indicated that Father did not engage completely with his children during visits, although it was obvious that he loved them.  Father's family reunification services plan included counseling, parent education, substance

3

abuse testing and treatment if necessary, and obtaining a driver's license.

On June 28, 2018, the juvenile court held a combined jurisdiction and disposition hearing. Mother and Father submitted to jurisdiction and DSS submitted based upon its reports to the court. The court sustained the allegations of the petition, granted temporary custody and care of the children to DSS, and ordered Mother and Father to participate in family reunification services.

*Six-Month Review*

DSS prepared a status report for the six-month review hearing, recommending that the children remain in foster care and that Mother and Father continue to receive family reunification services. Mother had reported to the DSS social worker that Father and other paternal relatives physically abused the two older children. She added that Father sold drugs in the children's presence.

The report also indicated that Father was employed full time and lived in a two-bedroom apartment with his girlfriend. Father had completed an assessment for drug and alcohol abuse and was favorably dismissed from the program after three months of negative test results. Father also attended a school conference concerning his middle child, although the instructor reported that Father texted on his cellular telephone throughout the meeting and quickly left when the conference ended. Father completed parent education classes, although the instructor believed that Father's girlfriend provided the written homework assignments. On October 29, 2018, Father and his girlfriend argued and slapped each other; DSS subsequently recommended that they participate in domestic violence prevention classes.

Father received weekly two-hour supervised visits with the children, who requested that Father's girlfriend also attend.

Overall, Father was complying with his reunification services program (Father "has done a great job of enrolling and comp[l]eting all recommended services").  He also admitted previous acts of domestic violence and inappropriate discipline of the children.  Father expressed a desire to improve his efforts at providing a safe and adequate home for the children.

The six-month report also indicated that the children were doing well in their foster home and each child was attending mental health therapy.  The two older children indicated that Father had struck them at times.  The middle child expressed concern about returning to Father's care.

On December 13, 2018, Mother, Father, Father's girlfriend, the foster parents, and paternal relatives, among others, attended the six-month review hearing.  Father reported that he and his girlfriend were assessed for domestic violence counseling, but did not meet the requirements for participation.  Father also requested increased visitation with the children, including unsupervised visitation.  Counsel for the children opposed unsupervised visitation and reported that the children requested to stay in foster care and expressed concern about returning to Father's care.

Following argument by the parties, the juvenile court continued the children as dependents of the court and admonished Mother and Father to continue their efforts in reunification services.  The court also granted DSS the discretion to increase visitation to each parent, in the best interests of the children.  The juvenile court judge stated:  "I'm going to go slowly

5

until I see what is real, noticeable progress, and that's not what I'm seeing."

*12-Month Review*

DSS prepared a 12-month review report that recommended that the children remain in foster care, Mother receive additional reunification services, and Father's reunification services be terminated.

DSS reported that the children were doing well in foster care but that they feared returning to Father's care. E.G. hid under chairs to avoid visits with Father and had nightmares that Father abducted her. She experienced alarming emotional stress and bedwetting. E.G. also reported that Father had physically abused her and her siblings and had left them without food.

A.G. physically resisted visits with Father, kicking, screaming, and hiding underneath her bed. On two occasions, she fled the bus and ran into traffic. A.G. also pleaded with her foster mother to return to her foster home ("They're going to take me. Just take me home with you.").

J.G. also resisted visits with Father, hiding under furniture or running away. J.G. began bedwetting and stated that Father had hit and shouted at him. However, when visits with Father ended, J.G. would cry and ask to return home to Father.

By the time of the 12-month review hearing, Father remained employed full time and was seeking improved housing. The DSS social worker was concerned, however, that Father had not demonstrated behavioral changes. Although he was engaging in counseling to address domestic violence and anger management, he did not discuss the events leading to the dependency proceedings. Father also denied to the social worker that he had anger management issues and insisted he had not

left the children alone or without food. Father complained to the social worker that DSS was not providing him the necessary assistance and support, but when asked for specifics, he replied that he did not need DSS assistance.

Father visited his children consistently, twice a week from March 21, 2019, through May 2019. He brought snacks to the visits and divided his attention equally among the three children. At one visit, however, the two older children wet their clothing. At another visit, J.G. received an unexplained bump on his head. On yet another visit, E.G. and J.G. physically fought but Father ignored them and the social worker aide intervened. Following these incidents, the DSS social worker recommended that Father work with a parent education coach. The Court Appointed Special Advocate agreed with the DSS recommendation to terminate Father's reunification services, based upon the children's preference for their foster home and their upsetting behavior following visits with Father. The advocate had observed the children for 66 hours prior to her recommendation.

*Placement with Paternal Grandparents*

On March 22, 2019, the children had a supervised visit with their paternal grandparents. The visit involved the use of a language translator because the children did not speak Mixteco, the primary language used by the grandparents. The grandparents were then living in their own apartment to assist with the licensing process for placement. DSS processed their licensing request, although it had concerns that the grandparents previously had physically disciplined the children, spoke the Mixteco language, did not have driver's licenses, and may not be able to maintain boundaries with Father.

In an addendum report, DSS reported the grandparents' request for placement of the children. The report discussed the factors of section 361.3 regarding relative placement. Many of the section 361.3 factors were positive, favoring placement, i.e., Father supported the placement, the grandparents lived near Father, the grandparents passed the requisite background checks, the three children would remain together (as they were in the foster home), and the grandparents had frequent visits with the children who appeared happy to see them.

Other factors were either neutral or negative, i.e., the best interests of the children indicated placement in their current foster home, Mother did not support placement with the grandparents due in part to their use of physical discipline and poor treatment of her, the children did not speak the Mixteco language and the grandparents did not speak the English language, and the grandparents did not drive and would rely on public transportation for the children's medical and therapy appointments.

In sum, DSS considered the section 361.3 factors and recommended that the children remain in their present foster home because placement with their paternal grandparents would not be in the children's best interests. DSS noted that after living with their foster parents for one year, the children had become bonded and attached to them. The foster family was also willing to be the concurrent permanent plan if reunification efforts were unsuccessful.

On July 17, 2019, the juvenile court held a contested 12-month review hearing. The DSS social worker, Father, and Father's girlfriend testified.

The DSS social worker stated that Father had consistently and regularly visited his children and generally the visits went well. The social worker opined that Father had not made significant progress in remedying the problems that led to the children's removal in part because he lacked insight into the children's needs. Father denied the disclosures made by the children and was not receptive to discussing their complaints. Although Father had completed the checklist of family reunification services, including counseling and the services of a parent education coach, he still could not demonstrate that he could meet the emotional needs of the children. The social worker opined that it was not in the children's best interests for Father to continue receiving reunification services.

Father testified that he and his girlfriend were resolving any differences without domestic violence and that he had learned to discipline his children with time-outs or less computer-tablet time rather than physical methods. He admitted that he never had a driver's license although he drove the children in his vehicle. Father also denied drinking alcohol or using drugs.

Following argument by the parties, the juvenile court later issued a ruling terminating family reunification services to Father. The juvenile court judge stated that Father "was unable or unwilling to really reflect on [his] own actions and the impact those actions have on [his] children." Specifically, the court found that although Father had consistently visited the children and had made significant progress as required by section 366.21, subdivision (g)(1)(A) and (B), he did not demonstrate his capacity and ability to complete the objectives of his treatment plan and provide for the safety, protection, physical and emotional well-

being, and special needs of the children. (§ 366.21, subd. (g)(1)(C).)

On August 12, 2019, the juvenile court held a hearing regarding the paternal grandparents' request for placement. The grandmother testified that she and her husband lived in a two-bedroom apartment and they had attended parent education, first aid, and CPR classes. She stated that her first language was Mixteco and her second language was Spanish, but she did not speak the English language. The grandmother did not drive but her husband was in the process of obtaining his driver's license. She acknowledged that the children had special needs, but could not describe those needs. The grandmother explained that the children were traumatized because they were not living with their parents. She stated that she would not understand if the children were frightened to visit their father. The grandmother also stated that she would spank the children and her husband would shout at them if they needed discipline.

Father also testified and explained that he and his girlfriend live apart from the paternal grandparents, about four blocks away. He stated that he understood that he could not visit the children and paternal grandparents without DSS permission.

Following argument by the parties, the juvenile court denied the grandparents' request for placement. The court ruled that it decided the request based upon the children's best interests given their current and future needs.

Father appeals and contends that: 1) the juvenile court erred by terminating his family reunification services, and 2) the juvenile court abused its discretion by denying the grandparents' placement request.

10

*DISCUSSION*

*I.*

Father argues that the juvenile court erred by terminating his reunification services and by finding that he had received reasonable reunification services. He asserts that DSS did not tailor the services plan to his needs or provide reasonable services to effectuate the plan they designed. Father suggests that DSS failed to provide sufficient mental health services to his children or to provide additional sessions with the parent education coach.

We review the findings of the juvenile court regarding termination of reunification services for substantial evidence. (*J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 535.) We draw all reasonable inferences in favor of the court's findings and do not redetermine conflicts in the evidence. (*Ibid.*) We also review findings regarding the adequacy of reunification services for substantial evidence. (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 971.) The finding that reasonable reunification services have been provided must rest upon clear and convincing evidence. (*Ibid.*) Pursuant to this heightened burden of proof, the evidence must be so clear as to leave no substantial doubt. (*Ibid.*)

At the conclusion of a 12-month review hearing, the juvenile court shall continue a case for up to six months if there is a substantial probability that a child will be returned to a parent's custody. (§ 366.21, subd. (g)(1).) A "substantial probability" requires the court to find that the parent regularly contacted and visited the child; made significant progress in resolving the problems that led to the child's removal; and demonstrated the capacity and ability to complete the objectives

11

of the treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs. (*J.H. v. Superior Court*, *supra*, 20 Cal.App.5th 530, 535.)

Here sufficient evidence supports the juvenile court's decision to terminate reunification services. Although Father visited his children consistently and fulfilled the requirements of his services plan, he did not demonstrate that he could provide for the children's safety, protection, physical and emotional well-being, and special needs. (§ 366.21, subd. (g)(1)(A)-(C).) The children displayed extreme stress prior to visits with Father, including nightmares, hiding underneath furniture, running into traffic, screaming, refusing to dress, and bedwetting. The children returned from visits at times with urine-soaked clothing and, in the case of J.G., a playtime-injury.

Father demonstrated little insight into his children's trauma or behavior and denied that they had been abused or left without food during his care. He blamed the vehicle accident, Mother, and the foster parents for the children's trauma. The DSS social worker and the juvenile court recognized that Father lacked the capacity to self-reflect upon his behavior that traumatized the children, and that "all the parenting classes in the world" would not help him absent self-reflection.

Sufficient clear and convincing evidence also supports the juvenile court's implied finding that the reunification services provided were adequate. Here DSS provided referrals to drug and alcohol treatment, parent education classes, supervised visitation, domestic violence counseling, mental health treatment, and a parent education coach. Father's therapist reported that Father was guarded during treatment sessions and would not discuss the issues leading to the children's removal. In

discussions with the DSS social worker, Father denied the complaints raised by the children and Mother, and blamed the foster parents for spoiling the children and suggesting to them that they had been mistreated. DSS identified the problems leading to the loss of Father's custody of the children, offered reasonable and adequate services to remedy those problems, maintained reasonable contact with Father and made reasonable efforts to assist him. (*In re Alvin R.*, *supra*, 108 Cal.App.4th 962, 972 ["Reunification services need not be perfect"].)

*II.*

Father contends that the juvenile court abused its discretion by denying the paternal grandparents' request for placement.[3]

The juvenile court possesses sound discretion regarding relative placement. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) When a relative requests placement, the law requires that the relatives be assessed and considered favorably, subject to the court's consideration of the best interests of the child, among other things. (*Id.* at p. 320.) Section 361.3, subdivision (a)(1)-(8) sets forth the factors regarding relative placement.

Here DSS analyzed each of the section 361.3, subdivision (a) factors in its reports. Factors opposing placement with the grandparents included the significant language barrier, the grandparents' lack of driver's licenses, and grandmother's lack of understanding of the children's significant emotional trauma.

---

[3] The paternal grandparents applied for placement prior to the 12-month review hearing and termination of Father's reunification services. DSS processed the grandparents' application many months prior to the 12-month review hearing, although the juvenile court held the contested placement hearing approximately three weeks after the termination of services.

The juvenile court received the DSS report into evidence and, prior to ruling, recessed to review the facts and the law.

In ruling, the juvenile court referred to the best interests of the children, relying upon their 16-month foster home placement. The court also referred to the grandparents' "significant barriers" to provide for the children's needs.

The juvenile court did not abuse its discretion by denying the grandparents' placement request. Grandmother's testimony revealed that she did not appreciate the children's special needs or the trauma they experienced in Father's care and from the vehicle accident. The grandparents also did not currently have driver's licenses and the language barrier with the children was a significant one. We presume the court considered the DSS reports and the testimony at the hearing, as well as the statutory factors of section 361.3, subdivision (a).

*DISPOSITION*

The orders are affirmed.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.

We concur:


PERREN, J.


TANGEMAN, J.

14

Charles S. Crandall, Roger T. Picquet, Judges

Superior Court County of San Luis Obispo

_____

Judy Weissberg-Ortiz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rita L. Neal, County Counsel, and Jenna Morton, Deputy, for Plaintiff and Respondent.