Filed 9/17/24  R.D. v. Superior Court CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| R.D.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY,<br><br>    Respondent;<br><br>SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Real Party in Interest. | 2d Juv. No. B338134<br>(Super. Ct. No. 23JD00221)<br>(San Luis Obispo County) |

R.D. (Mother) seeks extraordinary writ relief from the juvenile court's order terminating family reunification services with her daughter D.G., and setting a permanent plan hearing

pursuant to Welfare and Institution Code section 366.26.[1]  We deny the petition for extraordinary writ.

*FACTUAL AND PROCEDURAL HISTORY*

Mother has four children, including D.G., who are dependents of the juvenile court.  On August 18, 2022, law enforcement and San Luis Obispo County Department of Social Services (DSS) responded to the home where Mother, D.G., D.G.'s father G.G. (Father), and the other children resided.  Law enforcement found images of child pornography on Father's cell phone and arrested him.  Mother agreed not to permit Father to reside in the home or to be left alone with the children.  She also agreed to participate in drug screening.  Her later test results were positive, however, for amphetamine, benzodiazepine, and tetrahydrocannabinol (THC).  Mother then agreed with DSS to reside with the children's maternal grandmother and to remain sober.

On May 2, 2023, Father was convicted of possession of child pornography and became a lifetime registered sex offender.  Despite probation terms prohibiting Father from being alone with D.G., he appeared at the probation department with her.  Several months later, his probation officer found Father alone in a hotel room with D.G.  Father stated that Mother left D.G. with him while she worked.  The probation officer found a methamphetamine pipe and a bag of marijuana in the motel room.  Father admitted to smoking methamphetamine that day and claimed Mother used methamphetamine also.  Father's cell phone also contained child pornography and he was arrested

_____

[1] All statutory references are to the Welfare and Institutions Code.

2

again. DSS placed D.G., then nearly three years old, in protective custody.

When Mother later arrived at the hotel room, she acknowledged that Father was not allowed to be alone with D.G. On August 23, 2023, Mother agreed to participate in drug testing. Laboratory results later revealed that Mother had positive results for amphetamine and methamphetamine.

On August 24, 2023, DSS filed a dependency petition regarding D.G. pursuant to section 300, subdivision (b) [child at substantial risk of harm due to parents' conduct].) The juvenile court held a detention hearing and placed D.G. in the protective custody of DSS.

On September 1, 2023, Mother participated in a drug and alcohol assessment. She denied the use of controlled substances but two drug screenings established otherwise. The assessment report recommended that Mother complete random drug testing and participate in group and individual counseling.

Since D.G.'s detention, Mother has maintained visitation with her, but Mother is consistently late to the visits, on one occasion one hour late.

On November 1, 2023, the juvenile court held a combined jurisdiction and disposition hearing. The court sustained the allegations of the dependency petition, ordered Mother to participate in family reunification services, and ordered D.G. to remain in the custody and care of DSS. The court bypassed reunification services to Father due to his conviction for possession of child pornography and lifetime registration as a sex offender. (§ 361.5, subd. (b)(16).)

*Interim Review Hearing*

On February 1, 2024, the juvenile court held an interim review hearing. Mother was not compliant with her family reunification services plan and was pregnant with her fourth child. She had positive opiate and marijuana tests in October and December 2023; in November 2023, she did not participate in drug testing at all. Mother also did not participate in a mental health assessment and continued to appear late for her supervised visits with D.G.

*Six-Month Review Hearing*

The juvenile court held a continued six-month review hearing on May 29, 2024. The DSS status review report indicated that during the prior six months, Mother had positive drug tests on 10 occasions (October 26, 2023 – March 14, 2024). Mother also had not participated in mental health assessment and treatment. DSS recommended that the court terminate reunification services and set a permanent plan hearing for D.G.

Cathy Kelly, the DSS social worker, testified at the review hearing that Mother had missed two drug tests in May 2024 and tested positive for opiates on May 14, 2024. Mother claimed the opiates were prescribed by her physician, but she could not produce a prescription.

Mother testified that she began participating in drug and alcohol assessment several weeks prior to the May 29, 2024, hearing. She explained a positive fentanyl test as the result of accidental exposure.

The juvenile court found that return of D.G. to Mother's custody would create a substantial risk of detriment to D.G.'s physical or emotional well-being. (§ 366.21, subd. (e)(1).) The court also found by clear and convincing evidence that DSS had

4

provided reasonable reunification services and that Mother did not participate regularly and make substantive progress in her services plan. (*Ibid.*) The court then set a permanent plan hearing for September 19, 2024.

Mother seeks an extraordinary writ directing the juvenile court to vacate its orders terminating reunification services and setting a permanent plan hearing.

*DISCUSSION*

Mother argues that the juvenile court had discretion to continue reunification services, relying on *M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 182, but mistakenly believed it did not. She adds that she is currently in a residential drug treatment program and is making efforts toward sobriety.

We review an order terminating family reunification services for substantial evidence. (*J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 535 ["We resolve all conflicts in favor of the court's determinations, and indulge all legitimate inferences to uphold its findings"].) We examine the entire record in a light most favorable to the trial court's findings to determine whether substantial evidence supports those findings, recognizing the clear and convincing evidence standard of proof. (§ 366.21, subd. (e); *Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1121-1122.) "The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return [of the child] would be detrimental." (*M.V. v. Superior Court, supra,* 167 Cal.App.4th 166, 175.)

Here the juvenile court found that return of D.G. to Mother would be detrimental to D.G.'s well being because Mother failed to engage in the reunification services offered. DSS reports and

5

the social worker's testimony established that Mother had an unresolved substance abuse problem.  Mother had many positive as well as missed drug tests.  Throughout the dependency, DSS informed Mother of the shortened timeframe of D.G.'s dependency given her age.  Nevertheless, Mother did not attempt to commence drug treatment until three weeks before the continued six-month review hearing.  (The six-month hearing was held on May 29, 2024, but had been scheduled for April 24, 2024.)  Commencing services at this late hour was simply too little, too late.

*M.V. v. Superior Court*, *supra*, 167 Cal.App.4th 166, is distinguishable.  There the juvenile court erred by applying the statutory standard applicable at the 12-month review to the six-month review of a two-year-old dependent child.  (*Id.* at p. 184.)  The reviewing court also noted that the mother had been incarcerated during four of the six months and that she was not addicted to illegal drugs.  (*Id.* at p. 183.)  Unlike *M.V.*, the juvenile court here did not apply the incorrect legal standard and it also found that Mother did not have a sufficient history of negative drug tests and sobriety.

We conclude that clear and convincing substantial evidence establishes that 1) DSS offered Mother reasonable family reunification services from the inception of the dependency proceedings, and 2) Mother failed to comply with her reunification services plan despite warnings that the dependency had a shortened time frame.

Mother's recent efforts to achieve sobriety are outside the appellate record and were also not before the juvenile court at the six-month hearing.

We deny the petition for extraordinary writ.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


CODY, J.

Gayle L. Peron, Judge

Superior Court County of San Luis Obispo

_____

R.D., in pro. per., for Petitioner.

No appearance for Respondent.

Rita L. Neal, County Counsel, and Ann Duggan, Deputy Counsel Counsel, for Real Party in Interest.