Filed 8/18/25  A.Y. v. Superior Court CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| A.Y.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SANTA BARBARA COUNTY,<br><br>    Respondent,<br><br>SANTA BARBARA COUNTY CHILD WELFARE SERVICES,<br><br>    Real Party In Interest. | 2d Juv. No. B345957<br>(Super. Ct. Nos.: 1435958-A,<br>1435959-A, 24JV00090)<br>(Santa Barbara County) |

A.Y. (mother) petitions for extraordinary writ relief from the juvenile court's April 28, 2025 orders terminating family reunification services and setting a permanency planning hearing

as to her minor children Ne. R., Na. R., and Z.Y. (Welf. & Inst. Code,[1] §§ 366.21, subd. (f). 366.26.) We deny the petition.

*Facts and Procedural History*

On February 28, 2024, Santa Barbara County Child Welfare Services (CWS) obtained protective custody warrants for Ne.R. (born in June 2012), Na.R. (born in August 2013), and Z.Y. (born in June 2018) based on allegations of sexual abuse, domestic violence, and substance abuse. A dependency petition was subsequently filed as to all three children alleging failure to protect and abuse of a sibling (§ 300, subds. (b)(1), (j)). CWS also filed an incident report indicating that Z.Y.'s father Michael Y. (father Y.) had been arrested on February 8, 2024 for inflicting corporal injury upon mother while the children were present.

In its detention report, CWS set forth allegations that father Y. had also sexually abused both Z.Y. and Na.R. and that mother had failed to protect the children after becoming aware of the abuse. On February 26, 2024, Na.R. disclosed to an adult sibling that father Y. had been sexually molesting her since she was four years old, and had last sodomized her just two days earlier. Mother also admitted Z.Y. had recently told her that father Y. had "touched her on the butt while she was lying in bed" and had asked mother "to put a safety net around her bed to keep her father away." After mother confronted father Y. about the allegations regarding both children, he "convinced [her] that they were not true." Mother thereafter did nothing to protect the children from father Y. and "asked [Na.R.'s] adult sibling [to] wait three days to report the abuse to law enforcement[,] to which the adult sibling did not comply."

---

[1] All statutory references are to the Welfare and Institutions Code.

During a child forensic interview, Na.R. disclosed that father Y. had been "penetrat[ing] her anus and ejaculat[ing]" since she was four years old. When Na.E. told mother about the abuse on at least two different occasions, "mother told her she was probably dreaming." CWS also reported that Na.R. and Ne.R. had previously been taken into custody due to mother's use of methamphetamine and added that mother "has chronic and untreated substance abuse . . . and mental health concerns and has failed to maintain a safe sanitary home environment for the children."

At the conclusion of the detention hearing, the juvenile court ordered the children detained and set the matter for a combined jurisdiction and disposition hearing. At the conclusion of the jurisdiction and disposition hearing, the court granted mother reunification services in accordance with CWS's recommendation and bypassed services for father Y. Reunification services were also subsequently granted for Na.R.'s father David M. (father M.) At the conclusion of the six-month status review hearing, mother was granted an additional six months of services pursuant to CWS's recommendation.

In anticipation of the 12-month review hearing, CWS recommended that the court terminate services for both mother and father M. and set a permanency planning hearing under section 366.26. CWS reported that mother had picked up Z.Y. from school for a visit with a man the school suspected was father Y. A teacher thought she heard Z.Y. call out "dad[dy]" as she ran toward the man. CWS also offered a psychological evaluation of mother opining among other things that she would not likely benefit from further services "due to not managing her mental health condition appropriately prior to or after her children were

3

placed into protective custody and her addiction." Na.R. had also disclosed that prior to her detention she was sexually abused by mother's friend Joseph and that mother had done nothing to protect her.

At the 12-month review hearing, the social worker testified that mother had tested positive for tetrahydrocannabinol (THC) and had failed to submit to drug testing, engage in after care for her substance abuse, or take advantage of the case plan as it pertained to the sexual abuse suffered by Na.R. and Z.Y. Na.R. also disclosed to the social worker that mother had told her to lie about certain behaviors and had allowed father Y. to be present at a visit.

Mother testified that she had engaged in the offered services and had learned from the work she had done on her case plan. She admitted failing to complete an intake for substance abuse services and claimed she had been using THC for pain management. She claimed to have a "card" for cannabis but never shared that information with the social worker. She also denied knowing that her daughters were being sexually abused by father Y. or her friend Joseph.

At the conclusion of the hearing, the juvenile court found the return of the children to mother's custody would create a substantial risk of detriment, that CWS had offered reasonable services, and that there was not a substantial probability that the children would be returned to mother if an additional six months of services were provided. In finding that mother had not made significant progress in resolving the problems that led to the children's removal, the court reasoned that "[t]he problems that led to the children's removal, the specific sexual abuse, but more importantly the reaction to it, both in the domestic violence, the

4

drug and sex abuse world, the most dangerous thing you can do is put a child either in a parentified role or on the side of taking a parent's position by lying, which is what this mom has at least on occasion asked her children to do."

The court also found that "to complete the objectives of the treatment plan is somewhat different than completing the treatment plan. The lack of engaging in aftercare, the substitution of a different drug, the not informing the appropriate people that that is what she [is] doing, the minimization at each stage on each of the issues, the abuse, the [domestic violence] and the drugs shows she hasn't demonstrated being able to provide for the children's safety, protection, physical, emotional, and special needs." Accordingly, the court terminated services and set the matter for a section 366.26 hearing.

*Discussion*

Mother's petition is procedurally defective because it does not state the grounds for her claim or offer any supporting facts or legal arguments. (Cal. Rules of Court, rule 8.452; see, e.g., *Anthony D. v. Superior Court* (1998) 63 Cal.App.4th 149, 157-158 [facially inadequate petition may be summarily denied].) In any event, we have reviewed the record and conclude that the evidence supports the juvenile court's decision to terminate reunification services and set the matter for a section 366.26 hearing.

"At the conclusion of the 12-month review hearing, the juvenile court shall continue the case for up to six months if there is a 'substantial probability' the child will be returned to a parent's custody. [Citation.] A 'substantial probability' of reunification requires the court to find that the parent: regularly contacted and visited the child; 'made significant progress in

5

resolving problems that led to the child's removal from the home'; and 'demonstrated the capacity and ability both to complete the objectives of [the] treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs.' [Citation.] We uphold the court's findings if supported by substantial evidence. [Citation.] We resolve all conflicts in favor of the court's determinations, and indulge all legitimate inferences to uphold its findings. [Citation,.]" (*J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 535 (*J.H.*).)

Substantial evidence supports the juvenile court's finding at the 12-month review hearing that mother had not made significant progress in resolving the problems that led to the children's removal, or demonstrated her capacity to complete the objectives of the case plan and provide for the children's safety, protection, physical and emotional well-being, and special needs. The children were detained because mother failed to protect them from sexual abuse and domestic violence and was abusing drugs. Mother nevertheless continued to use THC, avoided drug testing, and had not participated in services intended to help her learn how to support children who are victims of sexual abuse and protect them from further abuse. She also told Na.R. to lie about certain behaviors, allowed father Y. to be present at a visit, and minimized the abuse suffered by Na.R. In light of this evidence, the court properly terminated services and set the matter for a permanency planning hearing. (See *J.H.*, *supra*, 20 Cal.App.5th at pp. 535-536, and cases cited therein.)

*Disposition*

The petition for extraordinary writ relief is denied.

6

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P.J.


CODY, J.

John McGregor, Judge
Superior Court County of Santa Barbara

_____

A.Y., in propria persona, for Petitioner.

No appearance for Respondent.

Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Snr. Deputy County Counsel, for Real Party in Interest.