Filed 5/20/26  A.C. v. Superior Court CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| A.C.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY,<br><br>    Respondent;<br><br>SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Real Party in Interest. | 2d Juv. No. B352347<br>(Super. Ct. Nos. 24JD-00130-001, 002, 003)<br>(San Luis Obispo County) |

A.C. (petitioner/Father) petitions for extraordinary writ review of the juvenile court's order terminating reunification services and setting the matter for a permanency planning

hearing.  (Welf. & Inst. Code, § 366.26.)[1]  He contends the trial court erred in finding that he was provided reasonable services. We deny the petition.

*Factual and Procedural Background[2]*

Petitioner is the father of minors I.C., Au.C., and E.C., who are the subjects of the dependency proceedings on review.

In June 2024, the County of San Luis Obispo Department of Social Services was notified of a domestic violence incident between mother and her partner, K.C., that occurred while the children were present.  K.C. reportedly attempted to choke mother as she held 10-month-old P.C. in her arms.  Since March 2021, Child Welfare Services in San Luis Obispo and Santa Barbara Counties had received 11 prior child welfare referrals for this family regarding concerns of an unclean home environment, inadequate supervision, caregiver absence, lack of consistent medical care, and domestic violence with children present.

When officers responded, they observed the family motor home to be filthy and in disarray with food and trash all over the floor.  There was no running water, electricity, or sewage.  The children appeared unkempt with dirty clothes and faces.  They also had lice.  A.C. admitted he had not seen his children since October 2023.  He was living in a recreational vehicle in Lompoc with his father and working with a Santa Barbara county housing program to find housing.  He reported he was in

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] We grant the department's request for judicial notice of the appellate records in case numbers B348376 and B350704.  (§ Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

compliance with probation for a driving under the influence conviction in 2022

The department filed a section 300 petition on behalf of then four-year-old I.C., three-year-old Au.C., two-year-old E.C., and 10-month-old P.C., alleging parents' failure to adequately supervise and protect the children and to provide adequate food, clothing, shelter, or medical treatment. The children were detained at the detention hearing.

In September 2024, at the jurisdiction/disposition hearing, the juvenile court sustained the petition, removed the children from parents, and ordered family reunification services. By then Father reported relocating to and working in Santa Maria. Father's case plan required that he engage in therapy, comply with probation, complete a parenting education program and participate in a substance abuse treatment program, including randomized drug testing. Father was ordered supervised visitation once per week for two hours, to be increased at the department's discretion.

The social worker reported in her February 2025 six-month review report, Father struggled to attend case plan appointments and produce a clean drug test. When the social worker visited Father at his home in Santa Maria in December she saw nine puppies caged in the living room with feces on the carpet. Father reported he was still attending school and not working. The substance abuse treatment program he attended reported his test results were " 'off the charts high' " for THC. Because of his lack of adequate case plan compliance and sustained extreme marijuana use, the department recommended that reunification services be terminated. In an April 2025 addendum report the social worker reported Father had recently moved into a new

residence after being unable to pay rent for his previous residence. Father's substance testing showed no sign of marijuana use beginning in late March. He lived by himself and had beds for all three children. After an April 2025 six-month review hearing, the juvenile court extended Father's reunification services finding that although he had a late start on case plan compliance, he was then doing a "lot of different services."

In June 2025, Father was arrested on an outstanding warrant related to his probation. According to the social worker's 12-month review report dated August 20, 2025, he failed to appear at a hearing in April 2024 to receive an ankle monitor and an arrest warrant was issued. When he learned of the warrant he went to court to address it and was immediately taken into custody. He was incarcerated until early September 2025. He lost his housing one month after being released from custody and moved into a friend's apartment. Prior to his arrest, Father had been complying with his case plan, participating in counseling, education services, and substance abuse services and visiting his children appropriately and consistently.

In October and November 2025, the juvenile court conducted a multi-day, contested 12-month review hearing. Several witnesses testified, including father's former therapist, the department social worker, and Father. At the conclusion of the hearing on November 21, 2025, the juvenile court found Father had not been provided with reasonable services and there was a substantial likelihood of reunification. The juvenile court ordered additional services and visitation to be increased to unsupervised visits, two times per week for a total of six hours per week.

In January 2026, the department's 18-month status review report recommended reunification services be terminated for Father. The department reported that although Father had made a great effort to gain case compliance, he had not been able to secure housing, due to "significant barriers" including past evictions and a criminal record including felony charges. He also had been unsuccessful in gaining employment. These issues created "significant barriers" to his reunifying with the children.

In February 2026, the juvenile court conducted a contested 18-month review hearing. Father testified that he wanted extended time to complete reunification services. He also testified that he was currently living in the men's section of the Good Samaritan Shelter. Father did not have a car or a driver's license. He had been applying for jobs but had not received any offers of employment. Father claimed to have a possible job lined up with a friend, but it was dependent on when his friend would take over his father's business.

The department social worker testified that Father's visitation had been increased and would have included overnight visits if he had an approved place to conduct them. The social worker also testified that Father was denied a potential apartment lease due to his criminal record, prior convictions, and low credit score. Additionally, Father had not had stable employment for over one year.

The department and minors' counsel argued that Father's services should be terminated and the matter set for a section 366.26 hearing. Father's counsel argued the juvenile court should order reunification services to continue until June 2026.

After hearing argument, the juvenile court found reasonable services had been provided, ordered services terminated, and set the matter for a section 366.26 hearing.

*Discussion*

Father contends the juvenile court "erroneous[ly]" found that he was provided reasonable services "after a prior finding that the <u>Department had not</u> provided reasonable services." But the juvenile court's finding at the 12-month review hearing had no bearing on its findings at the 18-month review hearing. Father also contends he was not provided a "substantial amount of services" in a "timely manner." The record shows otherwise.

We uphold the juvenile court's findings if supported by substantial evidence. (*J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 535.) We resolve all conflicts in favor of the juvenile court's determinations, and indulge all legitimate inferences to uphold its findings. (*Ibid.*; *In re R.T.* (2017) 3 Cal.5th 622, 633.) " 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.' " (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 689.)

Here, substantial evidence supports the juvenile court's finding that the department provided Father with reasonable services. After the 12-month review hearing, the department extended Father's services, increased his visitation, and would have permitted overnight visits if Father had been able to secure a safe place to conduct those visits. To be sure, Father appears "sincere" in his desire to reunify with the children, but as the juvenile court noted, it is "wishful thinking." Moreover, extending services beyond the permanency review hearing where the children are not returned to a parent required the court find

6

first, that the parent was "recently discharged from incarceration" and second, that there is "clear and convincing evidence that the best interests of the child would be met by the provision of additional reunification services." (§ 366.22, subd. (b)(1).)[3]

Even if Father's release from incarceration several months before the hearing satisfied the first requirement, substantial evidence supports the court's finding that there was not a showing extending services would be in the children's best interest.

The children are now seven, four, and three years old. They were removed from parents' physical custody in June 2024. They were exposed to conditions including unstable living conditions, and not having their basic needs met. The oldest states she does not remember ever living with her Father and does not want to live with him. The youngest child is reported to be hesitant to visit her Father, becomes uncomfortable and soils herself. Despite 20 months of reunification services, Father still cannot show that he is able to meet his own basic needs let alone the children's. On these facts, the juvenile court properly terminated Father's services and set the matter for a permanency hearing in accordance with section 366.26.

Substantial evidence also supports the court's implied denial to continue services under section 352.[4] "[A] juvenile court

---

[3] Section 361.5, subd. (a)(4)(A) also authorizes services not to exceed 24 months if the court finds, inter alia, "(i) it is in the child's best interest to have the time period extended."

[4] Section 352 authorizes the juvenile court to continue a hearing beyond the statutory time limit unless it "is contrary to the interest of the minor." (*Id.*, subd. (a)(1).) The court must give

may invoke section 352 to extend family reunification services beyond these limits if there are 'extraordinary circumstances which militate[ ] in favor of' such an extension." (*In re D.N.* (2020) 56 Cal.App.5th 741, 762; *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 632 [examples of extraordinary circumstance are "cases where a parent never receives reunification services or a reunification plan over the 18-month reunification period," where "the parent was hospitalized for most of the reunification period but demonstrated an 'impeccable record of visitation and efforts to comply with the reunification plan,' " and where "the parent sought a continuance to complete a program required by the reunification plan that was otherwise impossible to finish in time"].) There were no extraordinary circumstances shown here.

*Disposition*

The petition is denied.

<u>NOT TO BE PUBLISHED</u>.

YEGAN, Acting P. J.

We concur:

BALTODANO, J.

CODY, J.

---

"substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (*Ibid.*)

Matthew G. Guerrero, Judge

Superior Court County of San Luis Obispo

_____


A.C., in pro. per., for petitioner.

No appearance for Respondent.

Jon Ansolabehere, County Counsel, Molly M. Wilson, Vincent M. Uberti, Deputy County Counsel, for Real Party in Interest.