Filed 6/17/21  A.C. v. Superior Court CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| A.C.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY,<br><br>Respondent;<br><br>SAN LUIS OBISPO DEPARTMENT OF SOCIAL SERVICES,<br><br>Real Party in Interest. | 2d Civ. No. B310402<br>(Super. Ct. No. 19JD-00362)<br>(San Luis Obispo County) |

A.C. (Mother) filed a petition for extraordinary writ (Cal. Rules of Court, rules 8.452, 8.456) after the juvenile court terminated her reunification services with her child N.T. and scheduled a hearing under Welfare and Institutions Code section

366.26.[1] The San Luis Obispo County Department of Social Services (DSS) filed a juvenile dependency petition (§ 300, subds. (b)(1) & (g)), alleging N.T. came within the jurisdiction of the juvenile court. We conclude, among other things, that substantial evidence supports the court's order to terminate reunification services. The petition for writ is denied.

## FACTS

On October 21, 2019, DSS filed a juvenile dependency petition stating that, as a result of Mother's on-going substance abuse and lifestyle, N.T. is suffering serious physical and emotional harm. Mother did not "ensure [N.T.'s] school attendance" and did not provide him with adequate medical care. DSS had to place N.T. in "protective custody." DSS asked Mother to submit to a drug test; she refused. DSS noted that N.T. has "poor school attendance" and "poor hygiene." N.T. has "outstanding dental needs that [Mother] has not addressed."

In September 2019, DSS received a child neglect "referral" that N.T. was "filthy dirty" with "rotting teeth," and had "dental pain" and "dirty hair." He had red bite marks on his arms. He has asthma, but was not taking medication. He was staying in a motel with Mother. N.T. said he saw Mother's boyfriend "injecting intravenous drugs." N.T. told DSS that he had punched a man who went after Mother, and that a man with whom they were staying used drugs from a "glass pipe." Mother told DSS that she was unemployed and homeless.

A DSS social worker asked Mother to test with Drug and Alcohol Services (DAS) on September 6, 9, and 10. Mother failed to show up for any of these tests. She refused to participate in a

---

[1] All statutory references are to the Welfare and Institutions Code.

plan for random testing. She also told a social worker she would not agree to drug testing. DSS referred Mother to a "parent partner for support." But Mother did not respond to the efforts of the parent partner to contact her. A DSS social worker asked Mother to participate in a "safety plan" where N.T. could temporarily stay with a sober individual. Mother refused. On October 4, a DSS social worker called to confirm whether N.T. was safe. Mother did not respond.

On October 16, 2019, DSS obtained a "warrant" to interview N.T., but he was not present at his elementary school. On October 17, N.T.'s school contacted DSS and reported that a man who was not on a school "emergency contact card" list came to school to pick up N.T. This man was under the influence of a controlled substance. The school attempted to reach Mother, but her telephone was disconnected. The police went to the motel where Mother had been staying, but she was not there.

The juvenile court found "a prima facie showing has been made" that N.T. is a person described by section 300. It issued "detention orders." N.T. was placed with a "caregiver" at a "shelter resource home." Mother was granted visitation with N.T., but it was limited to "supervised" visits. Mother was allowed to make "reasonable phone contact" with N.T.

The juvenile court scheduled a jurisdictional hearing. On November 6, 2019, Mother's counsel requested the court to vacate that hearing and schedule a combined jurisdictional/dispositional hearing. The court granted that request.

In a jurisdiction report, DSS recommended that N.T. "remain in out of home care." It noted that Mother "has not taken steps to address the concerns of [DSS] and *is not engaged in Drug and Alcohol Services*." (Italics added.)

In a disposition report, DSS recommended that 1) N.T. remain in out-of-home care, and 2) Mother receive family reunification services. A social worker reported that Mother "has not cooperated" in completing a "Social Study/Family Assessment." DSS was concerned that Mother "will use drugs" and "will not be reachable when needed to care for [N.T.]." It noted that Mother "has had minimal contact" with DSS. Mother agreed to attend a required Child Family Team (CFT) meeting. But she later said she could not attend. She claimed she had a visit with N.T. that day. But the social worker confirmed that Mother had not visited N.T. that day. When the social worker was able to talk with Mother again, Mother said she missed the CFT meeting because she had a drug test. When reminded that she previously gave a different reason for not attending the CFT meeting, Mother said transportation problems were the reasons for not attending the CFT meeting. The social worker told Mother that DSS could provide her with a "monthly bus pass."

The DSS disposition report reflected that Mother told a social worker that she does not use drugs. Later, Mother admitted that she "uses marijuana daily, in the morning and at night." Mother's drug testing reports showed that for one test, the testers were given a diluted "non-human sample." There was also a positive test for methamphetamine and marijuana and another positive test for marijuana. Mother was scheduled for group mental health meetings on November 15 and November 22. She missed both of those meetings.

In a more recent addendum report, DSS said DAS decided *to close Mother's case* due to "her lack of follow through and participation." (Italics added.) Four CFT meetings were scheduled. Mother did not attend any of them. DSS was

4

repeatedly unable to contact Mother. DSS said Mother continues "to not engage in services" required by her case plan.

At the combined jurisdictional/dispositional hearing, Mother did not attend. Mother's counsel told the juvenile court she did not know where Mother was. The court found it had jurisdiction and that N.T. was properly removed from Mother's home. It scheduled six-month and 12-month reviews.

In the six-month status review report, DSS said Mother "has not engaged in" 1) mental health services, 2) substance abuse services, or 3) the parenting education services that were required for her case plan. Mother had not contacted the social worker for a substantial period of time. The juvenile court decided to continue services for Mother and have a subsequent 12-month review.

In the 12-month status review report, DSS recommended that reunification services be terminated and that the case be set for a section 366.26 hearing. It said that after "12 months of reunification," Mother "has been unable to demonstrate substantial progress."

At the February 10, 2021, 12-month review hearing, Mother testified that she had participated in drug and alcohol treatment since January 13, 2021. She had urinary tract infections which prevented her from being able to test for drugs regularly in September and October 2020. With medical treatment, she was able to resolve that problem and resume testing. Mother was asked, "But you tested positive for some illegal drugs when you did test; isn't that right?" Mother: "Yes, ma'am." Mother said she has been sober since January 15, 2021. She visits N.T. regularly. She only missed two visits in 12 months. N.T. entered foster care 16 months ago. Mother

testified she tested positive for methamphetamine in August 2020.

Social worker Jena Kuhnle testified Mother has participated in drug and alcohol services for "the last couple of weeks." But Mother has not made substantial progress in her case plan over the last 16 months. Kuhnle was asked, "[D]uring the course of this case, did [Mother] ever discuss with you her difficulty in providing samples for drug or alcohol testing?" Kuhnle: "No." Mother did not ask for "any additional assistance in engaging with drug and alcohol services prior to January of this year." Kuhnle testified, "We're a year into this case, and I don't believe that there has been a pattern of sobriety long enough that would allow us to believe that would continue should [Mother] be given more time." There is no substantial probability that N.T. can be returned to Mother's care "by the 18-month date in April of this year."

The juvenile court ruled that reunification services would be terminated and the case would be set "for a selection and implementation hearing." It found Mother had made "minimal" progress "toward alleviating or mitigating the causes necessitating placement." Mother's recent rehabilitation efforts were "too little and too late."

## DISCUSSION

### *Terminating Reunification Services*

Mother contends the juvenile court erred by not continuing reunification services.

DSS contends the juvenile court properly discontinued reunification services because the evidence shows there was no substantial probability N.T. would be returned to Mother's custody.

In reviewing a decision to terminate reunification services, we "uphold the court's findings if supported by substantial evidence." (*J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 535.) "We resolve all conflicts in favor of the court's determinations, and indulge all legitimate inferences to uphold its findings." (*Ibid*.) We do not weigh the evidence or decide the credibility of witnesses as those are matters for the trial court to determine. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

"At the conclusion of a 12-month review hearing, the juvenile court shall continue the case for up to six months if there is a 'substantial probability' a child will be returned to a parent's custody. (§ 366.21, subd. (g)(1).)" (*J.H. v. Superior Court*, *supra*, 20 Cal.App.5th at p. 535.)

"A 'substantial probability' of reunification requires the court to find that the parent: [1] regularly contacted and visited the child; [2] '*made significant progress in resolving problems that led to the child's removal from the home*'; and [3] 'demonstrated the capacity and ability both *to complete the objectives of [the] treatment plan* and to provide for the child's safety, protection, physical and emotional well-being, and special needs.' " (*J.H. v. Superior Court*, *supra*, 20 Cal.App.5th at p. 535, italics added.)

Where a parent makes marginal or unsatisfactory compliance with the reunification services case plan, the juvenile court may terminate reunification services. (*In re Alanna A.* (2005) 135 Cal.App.4th 555, 566.) "The main purpose of limiting the period of reunification in a dependency proceeding is to afford the child stability and permanency where reunification is unlikely within the statutory time limits." (*Ibid*.)

Mother contends she met the first requirement regarding regular visitation and contact with N.T. during the relevant

7

period. She notes that she "maintained daily contact with [N.T.] by phone or zoom during Covid restrictions." DSS agrees. It states, "It is uncontested that [Mother] regularly visited [N.T.], satisfying the first prong."

But DSS contends the other two requirements for continued reunification services were not met. It claims: 1) "by the time of the 12-month permanency hearing in February 2021, [N.T.] had been in foster care for 16 months"; and 2) "for 15 of those months, [Mother] did almost nothing and made almost no progress in addressing the problems that led to [N.T.'s] removal." The record supports these claims.

In the 12-month status review report for the February 2021 hearing, DSS recommended that family reunification services be terminated for noncompliance with Mother's case plan requirements. DSS said Mother was not participating "in any parenting education program." It noted that she was offered such a program, but she did not complete it. It said she also did not participate in mental health services. Mother "has not been consistent in her attendance" at substance abuse services.

Mother notes that she currently is successfully testing for drugs and alcohol and has "started attending AA meeting[s]." But DSS noted that Mother had only *recently* sought to "re-engage in" such "services." The juvenile court was reasonably concerned that Mother's efforts at compliance were too little and too late. " '[If] a parent in no way seeks to correct his or her own behavior or *waits until the impetus of an impending court hearing to attempt to do so*, the legislative purpose of providing safe and stable environments for children is not served by forcing the juvenile court to go "on hold" while the parent makes another stab at compliance.' " (*In re Christina L.* (1992) 3 Cal.App.4th

404, 414-415, italics added; see also *Los Angeles County Dept. of Children Etc. Services v. Superior Court* (1997) 60 Cal.App.4th 1088, 1092-1093 [a parent "may not refuse to participate in reunification treatment programs until the final reunification review hearing has been set and then demand an extension of the reunification period"].)

Mother had not shown a consistent or long-term commitment to rehabilitation. (*Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1505 [continuation of reunification services is not required where the parent "has made minimal efforts throughout a case"].) The serious problems that led to the placement continued. On September 29, 2020, Mother told the social worker that she was "continuing to use substances," including methamphetamine. As recently as December 16, 2020, Mother told the social worker that she was *still using* methamphetamine.

Mother claims DSS did not provide her with adequate services and assistance from her social worker. She appears to claim this excuses her failure to comply with case plan requirements during the reunification services period. But claims about alleged inadequacy of reunification services should be raised by the parent with the social worker during the reunification services period. (*Los Angeles County Dept. of Children Etc. Services v. Superior Court*, *supra*, 60 Cal.App.4th at p. 1093 [a parent may not "wait silently . . . until the final reunification review hearing to seek an extended reunification period based on a perceived inadequacy in the reunification services occurring long before that hearing"].)

Moreover, DSS presented evidence from which the juvenile court could reasonably find Mother's claims of inadequate

9

services are not correct. Services "will be found reasonable" where the agency identifies " 'the problems leading to the loss of custody,' " offers services to remedy the problems, and has made reasonable efforts to assist the parent. (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972.) Here DSS identified the services Mother needed and attempted to assist her. In December 2020, a DSS social worker asked Mother why she had not entered "sober living in July 2020 when it was offered." Mother responded that "she was not ready." Mother was also referred to a parenting education class in August 2020. The representative from that program made numerous documented attempts to enroll Mother in that class, but Mother did not cooperate. DSS provided Mother with "repeated referrals" for her substance abuse problem that she did not take advantage of. A DSS social worker advised Mother that DSS could provide her a monthly bus pass for her transportation. DSS provided Mother with visitation services with N.T.

Kuhnle testified she tried to obtain a psychological evaluation for Mother. She made multiple attempts to contact Mother and she scheduled an October meeting. But Mother did not attend that meeting or sign "the release." In a DSS report the social worker said DSS provided a referral for Mother to the county mental health department, but Mother did not participate in mental health services. In December 2020, DSS sent a letter to Mother warning her about her failure to participate in available mental health services. Mother was scheduled for group mental health meetings for November 15 and 22. But Mother did not attend those meetings.

After the six-month review period, the juvenile court found DSS had provided "reasonable services." After the 12-month

review, the court reviewed the DSS reports and the testimony and found DSS had provided reasonable services for Mother. Mother has not shown that those findings are not supported by the record. The DSS reports uniformly reflect that Mother's "real problem was not a lack of services available but a lack of initiative to consistently take advantage of the services that were offered." (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763.)

DSS notes that there are other factors that support the juvenile court's decision. In its last report DSS said it would not be safe to return N.T. to Mother as "[N.T.] would be at risk of exposure to substance abuse and related neglect." DSS highlighted several factors to support this determination, including that 1) Mother does not have stable housing, 2) she is not regularly engaged in case plan services, 3) she is using drugs, 4) she has failed to "consistently seek substance abuse treatment despite repeated referrals," and 5) she has not been "in consistent contact with [DSS]." DSS noted that Mother did not respond to the social worker's many documented attempts to reach Mother to discuss her case plan compliance issues.

DSS determined that additional reunification services would not be appropriate. It said after 12 months of services, Mother has not demonstrated "substantial progress" or a "pattern of sobriety." It noted that Mother consistently visits N.T. But she "has made limited efforts to address and resolve the problems that led to [N.T.'s] removal from the home." N.T. needs "a safe, sober home environment." N.T.'s current out-of-home placement is appropriate as he is "settled in the home."

Mother contends that she had a medical condition that excused her noncompliance with some case plan drug testing

11

requirements. That a parent may have some medical issues does not "excuse her from the statutory requirement of participating in a reunification plan, as some capacity to achieve the reunification goals is presumed." (*Angela S. v. Superior Court*, *supra*, 36 Cal.App.4th at p. 762.) Moreover, this was a credibility issue that was decided against Mother by the juvenile court. (*In re L.Y.L.*, *supra*, 101 Cal.App.4th at p. 947.) The court could reasonably find Kuhnle's testimony refuted the claim that medical problems prevented Mother from complying with her case plan requirements.

The juvenile court's findings show that it rejected the claim of excusable noncompliance based on the *long case history* provided by DSS reports. The court credited the facts in the most recent DSS report that concluded the noncompliance was due to Mother's lack of cooperation with DSS efforts to assist her rehabilitation and Mother's lack of progress in complying with her case plan responsibilities during a 15-month period. The court weighed the evidence and decided that the facts presented in DSS reports and Kuhnle's testimony were accurate. We do not weigh the evidence or decide issues of witness credibility. (*In re L.Y.L.*, *supra*, 101 Cal.App.4th at p. 947.)

Mother alleges new facts since the juvenile court's order and claims they show current successful rehabilitation. This may be commendable, if true, but we cannot consider these claims because they are not part of the record. (Cal. Rules of Court, rule 8.452 (b)(1) & (3); *Glen C. v. Superior Court* (2000) 78 Cal.App.4th 570, 583.) These new claims should initially be presented to the juvenile court. We have reviewed Mother's remaining contentions and we conclude she has not shown the court erred in deciding to terminate reunification services.

DISPOSITION

The petition for extraordinary writ is denied.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

PERREN, J.

TANGEMAN, J.

Charles S. Crandall, Judge

Superior Court County of San Luis Obispo

_____

A.C., in pro. per., for Petitioner.

No appearance for Respondent.

Rita L. Neal, County Counsel, Jenna Morton, Deputy County Counsel, for Real Party in Interest.