Filed 9/22/22  In re S.S. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re S.S., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B320672 (Super. Ct. No. 21JD-00047-001) (San Luis Obispo County) |
| RYAN S.,<br><br>    Petitioner,<br><br>v.<br><br>SAN LUIS OBISPO COUNTY SUPERIOR COURT,<br><br>    Respondent,<br><br>DEPARTMENT OF SOCIAL SERVICES, SAN LUIS OBISPO COUNTY,<br><br>    Real Party in Interest. | |

Ryan S. (father) petitions for extraordinary writ relief after the juvenile court, at a contested six-month review hearing,

terminated reunification services and set this dependency matter for a permanent placement hearing.  (Welf. & Inst. Code, § 366.26; Cal. Rules of Court, rule 8.452.)[1]  Father contends substantial evidence does not support the juvenile court's finding that the San Luis Obispo County Department of Social Services (department) provided him reasonable services.  He also contends his due process rights were violated.  We deny the petition.

FACTS AND PROCEDURAL HISTORY

In April 2021, three-month-old S.S. was removed from her parents' custody after law enforcement conducted a probation search of the family home and found methamphetamine, drug paraphernalia, synthetic urine, and two boxes of shotgun shells that were located in S.S.'s bedroom closet.  Father and mother were arrested.  S.S. was placed with paternal grandmother, Kelley S.

Father and mother have a history with the department, including seven referrals since S.S.'s birth in December 2020.  At the time of her birth, S.S. and mother both tested positive for amphetamine.  After father and mother were arrested following the probation search, the department filed a dependency petition pursuant to section 300, subdivision (b)(1) alleging that S.S. was at risk due to father and mother's substance abuse.

*Jurisdiction and Disposition Hearing*

The jurisdiction and disposition report prepared in June 2021, indicated that father had met with Drug and Alcohol Services (DAS) for a screening assessment in early May 2021.  Father reported that in the last 12 months, he used cannabis,

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise stated.

2

alcohol, and Vicodin. It was later determined that father's assessment was invalid because he had not disclosed an accurate history of his drug use. He was referred back to DAS for additional assessment and treatment services.

In July 2021, prior to the jurisdiction and disposition hearing, the department filed an addendum report that detailed recent events surrounding father's substance abuse. He was charged with preparing or offering false evidence, and a felony enhancement, after he was caught using a cheating device during a drug test for probation. (Pen. Code, § 134.) He also admitted to his probation officer that he had recently used fentanyl and Xanax.

Five days later, father was again caught using a cheating device during a random drug test for DAS. He left without providing a sample. In the meantime, father had a medical device surgically implanted that purportedly blocked the effect of opiates in the system.

At the combined jurisdiction and disposition hearing, father submitted on the department's recommendation and agreed to the case plan. The juvenile court declined father's request to change his progress from "minimal" to "adequate." The juvenile court assumed jurisdiction of S.S., ordered that she remain placed with paternal grandmother, and accepted the department's disposition recommendations.

*Three-Month Review Hearing*

The department's interim review reported "significant concerns" regarding parents' compliance with DAS testing and treatment. Father tested positive in June 2021 for benzodiazepine and fentanyl. In July 2021, he was treated for an "'unintentional overdose,'" and police found a small amount of

3

fentanyl on a piece of foil in father's home. As of August 2021, he had not met with DAS for an assessment as required by his case plan. In September 2021, father was arrested after his probation officer found a "'baggie'" with fentanyl and a BB gun in his home. Father admitted that he had used fentanyl the prior day.

At the review hearing, the juvenile court shared its concerns with parents' progress and warned that if this was a six month hearing, services would likely be terminated. The juvenile court encouraged parents to "step up and engage with services" and "the case plan." Father indicated he understood and would be going to DAS immediately.

*Six-Month Review Hearing*

The department's six-month review report prepared in December 2021 indicated father had two further assessments that were determined to be invalid because he continued to deny a substance abuse problem. Despite multiple attempts by DAS to reach father regarding his treatment plan, he did not make further contact with the assessor. The department recommended continued reunification services only as to father because he indicated he would be engaging with a private treatment program.

The juvenile court disagreed with the department's recommendation because it was concerned it could not make a finding that there was a substantial probability of returning S.S. to father's custody or that there had been sufficient progress to warrant continuing services to twelve months. The juvenile court set the matter for a contested six-month review hearing.

In February 2022, prior to the hearing, the department filed an addendum report and recommended that the juvenile court terminate services for both mother and father. The

4

department expressed concern that father had not adequately addressed the safety concern around his drug use and had not engaged in a treatment program. Father claimed he was denied services with the private treatment program because he had not abused drugs throughout the past year. Although his drug tests were negative since the last report, he had tested positive for fentanyl as recently as October 2021.

In March 2022, the initial six-month review hearing began with the testimony of father's mother, Kelley S., with whom S.S. had been residing since her detention in April 2021. The testimony primarily focused on the positive visits between father and S.S. After a brief recess, during which an off-the-record comment was made by the judge, father asked that the judge recuse herself and schedule the hearing before a different judge. To avoid any appearance of impropriety, the judge agreed, and the matter was continued to the end of the month.

In late March 2022, the six-month review hearing began again and was conducted before a different judge over a period of four days from March to May. At the time of the hearing, father was living in his mobile trailer and working in Oregon. Mother was pregnant with their second child and had traveled to Oregon to stay with father. In early March 2022, mother gave birth to a baby boy, R.S., who tested positive for controlled substances. The baby was detained by Oregon's Department of Health Services (ODHS).

Father testified that while he was living in Oregon, he was still returning to California for his random drug tests. However, he later admitted that on at least one occasion, he had somebody else provide a sample on his behalf. On another occasion, that

same individual attempted to provide a sample but left when staff asked to take his photograph.

Father admitted he had not participated in any classes through a certified addiction treatment program but explained he had made steps to maintain his sobriety by getting the medical implant, undergoing rapid detox, and had been attending Narcotics Anonymous (N.A.) for approximately three months.

The social worker testified that she did not believe S.S. could be returned to father's care because he had not followed through with his case plan components to provide for her safety. For example, father had not participated in random drug screenings since the last hearing despite the department's efforts to coordinate testing with ODHS, which would have required father to participate in treatment. The social worker also expressed concern that father chose to leave the state while he was in reunification services with S.S. and had not visited with her in person for approximately two months.

On the last day of the hearing, father's counsel planned to offer the testimony of Kelley S. However, in the interest of preventing cumulative testimony, the juvenile court informed counsel that it would accept as fact any testimony regarding the positive and appropriate nature of father's visits with S.S. Counsel agreed to "streamline" those issues.

*Juvenile Court Ruling*

The juvenile court found the department made reasonable efforts to return S.S. to a safe home and provided father and mother reasonable services designed to aid in overcoming the problems that led to S.S.'s removal. The juvenile court also found, by clear and convincing evidence, that mother made no progress toward alleviating or mitigating the causes

6

necessitating placement, and father made, "at best," "minimal efforts."

The juvenile court detailed father's missed tests for the 10 weeks prior to the hearing, his dishonesty in having another individual test on his behalf, his unwillingness to participate in a treatment plan, and the multiple invalidated assessments. The juvenile court concluded, father is "doing everything he can to suggest that he doesn't have a problem when in [the juvenile court's] opinion, the evidence is overwhelming that he does."

The juvenile court terminated reunifications for both parents and set the matter for a section 366.26 hearing.

## DISCUSSION

The department contends the writ petition should be denied as deficient because father has failed to provide citations to the record or legal authority in support of his contentions. (Cal. Rules of Court, rule 8.452.) Despite these deficiencies, we reach the merits of this matter. (See *Glen C. v. Superior Court* (2000) 78 Cal.App.4th 570, 580, 583.)

### *Standard of Review*

We review the juvenile court's findings to determine whether they are supported by substantial evidence. (*J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 535 (*J.H.*).) We construe all reasonable inferences and resolve all conflicts in favor of the juvenile court's determinations. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688-689 (*Kevin R.*).) "'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the [juvenile] court.'" (*Id.* at p. 689.)

*Reunification Services*

As a general rule, when a child is removed from parental custody under the dependency statutes, the juvenile court is required to provide reunification services for the parent and child. (§ 361.5, subd. (a); *In re Jesse W.* (2007) 157 Cal.App.4th 49, 59.) However, there is a shortened reunification services period of six months in cases where the "minor was under the age of three when removed from the physical custody of his or her parent." (*In re Jesse W., supra*, at p. 59; *Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1009, fn. 4.)

"If the child is not returned to parental custody at the six-month review hearing and is under three years of age, the court may set a section 366.26 hearing if it finds by clear and convincing evidence the parent failed to participate regularly and make substantial progress in a court-ordered treatment plan." (*Kevin R., supra*, 191 Cal.App.4th at p. 688, citing § 366.21, subd. (e).) If the juvenile court finds there is a substantial probability the child may be returned to his or her parent within six months or that reasonable services have not been provided, the juvenile court is required to continue the case to the 12-month permanency hearing. (*Kevin R., supra,* at p. 688.)

*Substantial Evidence*

Father contends substantial evidence did not support the juvenile court's findings that the department provided reasonable services. He also contends he "more than met the criteria" for continued services because he had "substantially complied" with his case plan. He cites to evidence favorable to him, including his purported sobriety since October 2021, his attendance to N.A. meetings, and six months of clean drug tests. But the issue on appeal is not whether some evidence supports his position.

8

Rather, it is whether substantial evidence supports the juvenile court's judgment. (*J.H.*, *supra*, 20 Cal.App.5th at p. 535.)

Here, the juvenile court found father had made, "at best," "minimal efforts" to comply with his case plan. There was no dispute he had completed his parenting education classes, participated in S.S.'s medical and therapy appointments, and had "appropriate" and "positive" visits with S.S. But the evidence was "overwhelming" that father had a substance abuse problem and had not engaged in treatment services as required by his case plan. Accordingly, there was no reason to believe he would complete services in the time required by law if they were continued.

Moreover, father's contention that he "substantially complied" with his case plan is not supported by the record. For example, father had multiple missed drug tests, two positive tests for fentanyl, used a cheating device, suffered a suspected fentanyl overdose, and on at least two occasions, provided or attempted to provide a fraudulent drug test by having another individual test on his behalf.

In addition, after father moved to Oregon, he eventually stopped providing drug tests altogether, despite the department's efforts to facilitate testing with ODHS. As the juvenile court explained, random drug tests would have been helpful to "corroborate" father's claim that he has remained drug-free, particularly where his credibility was in question.

By the time of the hearing, father was also not attending his in-person visits with S.S. The juvenile court opined that it was "disingenuous" for father to move 300 miles away from S.S. and then complain this was a "hardship" for him. We agree. "[R]eunification services are a benefit, not a constitutional

entitlement," therefore, "the juvenile court has discretion to terminate those services at any time, depending on the circumstances presented." (*In re Jesse W.*, *supra*, 157 Cal.App.4th at p. 60.)

We conclude substantial evidence supports the juvenile court's finding that the department offered or provided reasonable reunification services and there was no substantial likelihood that S.S. would be returned to father if his services were continued.

*Alleged Due Process Violations*

Father makes several arguments that the juvenile court and the department violated his due process rights. For example, he contends, the recusal of the first judge prejudiced him because his situation was much worse by the time the second six-month review hearing began in late March 2022. He also makes several contentions that the second judge was biased, and father was limited in the presentation of his case. These contentions are meritless.

Father also contends the juvenile court's refusal to allow Kelley S. to testify de novo was evidence of bias. But the juvenile court could limit testimony to that which was relevant to the contested issue of father's compliance with his case plan. (See *In re Jeanette V.* (1998) 68 Cal.App.4th 811, 816-817.)

Father next contends the department did not follow prevailing case law in providing reunification services. He is wrong. "The adequacy of reunification plans and the reasonableness of the [department's] efforts are judged according to the circumstances of each case." (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164.) Here, the record establishes that the department and DAS made numerous attempts to

facilitate treatment services and father chose not to avail himself of those services. Accordingly, father's reliance on *In re Alvin R.* (2003) 108 Cal.App.4th 962 is inapt.

Father's contention that the department violated due process by failing to give notice or identify its witness list is also meritless. The juvenile court concluded that "any reasonable attorney would have expected that the social worker would be called as a witness." Based on her background, she was qualified as an expert witness.

Lastly, we do not reach father's contention that the juvenile court should have given full faith and credit to the Oregon action involving R.S. because it was not the subject of the underlying dependency action involving S.S. and is not properly before this court.

## DISPOSITION

The petition for an extraordinary writ is denied.

<u>NOT TO BE PUBLISHED</u>.


YEGAN, acting P. J.


We concur:



PERREN, J.*



BALTODANO, J.

---

* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11

Brian Aronsen, Judge
Superior Court County of San Luis Obispo
_____

Jane L. Tanner Wierda; Egan Law and M. Jude Egan, for Petitioner.

Rita L. Neal, County Counsel, Ann Duggan, Debra Barriger, Deputy County Counsel, for Real Party in Interest.

No appearance for Respondent.