Filed 7/18/23  K.S. v. Superior Court CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| K.S.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SANTA BARBARA COUNTY,<br><br>    Respondent;<br><br>SANTA BARBARA COUNTY CHILD WELFARE SERVICES,<br><br>    Real Party in Interest. | 2d Juv. No. B328269<br>(Super. Ct. Nos. 22JV00051, 22JV00052, 22JV00053)<br>(Santa Barbara County) |

In this petition for extraordinary writ K.S. (Mother) challenges the juvenile court's order terminating her reunification services and setting the matter for a selection and implementation hearing regarding her children, K.W., K.R., and

K.R.  (Welf. & Inst. Code, § 366.26, subd. (*l*)[1]; Cal. Rules of Court, rule 8.452.)  She contends the evidence was insufficient to terminate reunification services.  We deny the petition and deny the request to stay the section 366.26 hearing, currently scheduled for August 17, 2023.

FACTUAL AND PROCEDURAL HISTORY

Mother has a history of untreated substance abuse preventing her from caring for her children.  At birth, the two younger children tested positive for amphetamines.  She has struggled to provide the children with stable housing; since 2019 they were "couch surfing" or sleeping in the car, in shelters and hotels, or on the floor.

In 2020, Mother and the two younger children were housed at an inpatient substance abuse program, Project Preemie.  They were removed after Mother had an altercation with another client.  Mother also enrolled in a Good Samaritan home that provided housing, but she was removed from the home for drug use.

In December 2021, Mother relapsed on methamphetamine.  On two occasions, social workers found her asleep and difficult to wake while her children remained unsupervised.  Mother sometimes left the home to smoke methamphetamine, leaving the younger children, then three years old and 17 months old, in the care of the 11-year-old child, but without telling him she was leaving.

On multiple occasions, Mother's "on again off again" boyfriend, Rudy G., committed physical violence against her.  He assaulted her in February 2022 in the presence of the children,

---

[1] Further statutory references are to the Welfare and Institutions Code.

2

leaving bruises on her face and arms.  The next week, Mother violated housing rules by sneaking Rudy G. into her room through a window.  As a result, Mother and the children were evicted and became homeless.

The juvenile court found the dependency petitions true (§ 300, subds. (b)(1) & (g)) and ordered reunification services for Mother.  The court ordered the children removed from Mother's custody.  (§ 361, subd. (c)(1).)

At the six-month review hearing, the children resided in a resource family home.  Mother lived at the Bridge House shelter and participated in substance abuse treatment and individual therapy.  Bridge House provided her services to seek long-term housing.  Mother did not appear for parenting education sessions at first but consistently appeared thereafter.  She was also involved in another domestic violence incident with Rudy G., but declined to seek a restraining order because she no longer had contact with him.  The court found Mother's progress at alleviating the causes necessitating placement "[a]dequate" and continued reunification services.

The next month, Mother was removed from Bridge House for violating the rules because she spent a night away from the shelter.  She then lived with her new boyfriend, John H., and stayed with friends.  John H. had a criminal record including domestic violence and substance abuse.  His most recent conviction was a misdemeanor in 2015.  His parental rights for his own children were terminated in approximately 2021 based on domestic violence and drug use.

The Santa Barbara County Department of Child Welfare Services (department) warned Mother that it did not approve John H. to be around her children.  But she nevertheless allowed him to visit them on several occasions.  Mother falsely told the

3

department that John H. had only one contact with the children. Two months before the 12-month permanency hearing, the department again reminded Mother that John H. was not to be at visits with the children. But Mother again allowed John H. to be present at a visit with the two younger children later that day.

At the contested 12-month permanency hearing, the department agreed Mother made progress in her substance abuse program, tested clean, and protected the children from emotional harm. She successfully completed a residential treatment program, graduated from Family Drug Treatment Court, and completed domestic violence education and a parenting program. But the Tri-Counties Regional Center discontinued services for the youngest child because Mother failed to participate. At the time of the hearing, Mother had resumed living at Bridge House, which allowed overnight visits with the children twice a week.

Mother testified she met John H. at an N.A. meeting. He remained her boyfriend and she was pregnant with twins he fathered, due on June 12, 2023.

Between September and December 2022, Mother worked part-time as a home care aide. She planned to continue working after the birth of her twins if she was able. Mother also told the court she would bring the twins with her on visits with the other children but would not bring John H.

The department and counsel for the three children asked the court to terminate Mother's reunification services and set a section 366.26 hearing. The court found Mother had not made substantial progress in alleviating the causes that led to removal of the children nor demonstrated the capacity and ability to complete the objectives of the treatment plan. (§ 366.21, subd. (g)(1)(B) & (C).) It also found that return of the children to Mother's physical custody would create a substantial risk of

4

detriment to the children's safety, protection, or physical and emotional well-being.  (§ 366.21, subd. (f)(1).)  The court terminated reunification services and set a selection and implementation hearing (§ 366.26).[2]

## DISCUSSION

Mother contends the juvenile court erred when it terminated reunification services.  We disagree.

We review the juvenile court's determinations for substantial evidence.  (*J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 535.)  We resolve all conflicts and inferences in favor of the decision and do not reweigh the evidence.  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  We may stay the section 366.26 hearing only upon "an exceptional showing of good cause."  (Cal. Rules of Court, rule 8.452(f).)

### *Reunification services*

At the 12-month permanency hearing, the juvenile court may continue the case for additional reunification services, not to exceed a total of 18 months from the date physical custody was removed, but "only if it finds that there is a substantial probability that the child will be returned to the physical custody of their parent or legal guardian and safely maintained in the home within the extended period of time."  (§§ 366.21, subd. (g)(1); 361.5, subd. (a)(3)(A).)  To continue the case, the court must find: (A) the parent "consistently and regularly contacted and visited with the child," (B) the parent "has made significant progress in resolving problems that led to the child's removal from the home," and (C) the parent "has demonstrated the

---

[2] The court continued reunification services for Kevin W., the oldest child's presumed father.  He is not a party to this writ proceeding.

5

capacity and ability both to complete the objectives of their treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (§ 366.21, subd. (g)(1).)

" '[S]imply complying with the reunification plan by attending the required therapy sessions and visiting the children is to be considered by the court; but it is not determinative. The court must also consider the parents' progress and their capacity to meet the objectives of the plan; otherwise the reasons for removing the children out-of-home will not have been ameliorated.' " (*Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856, 867.) Continuing reunification services beyond the 12-month hearing is "disfavored." (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 845.)

To Mother's credit, the department concluded she visited the children consistently, stayed free from illegal drugs, and protected the children from emotional harm. But the department also determined Mother did not demonstrate her ability to safely maintain her children because she allowed John H. to be around them, failed to participate in developmental services for the youngest child, and was unable to provide them with a safe and stable home. Mother failed to prioritize finding housing despite knowing it was important for her reunification with the children. Mother also did not adequately comply with psychological treatment because, although she attended therapy, she failed to maintain healthy boundaries by allowing contact between John H. and the children.

The juvenile court found Mother had not made substantial progress in resolving the problems that led to removal of the children. (§ 366.21, subd. (g)(1)(B).) The court noted that Mother participated in programs that might have helped her obtain

6

permanent housing, but her poor choices removed her from those programs and returned her to "square one" regarding her search for housing.  The court believed that family maintenance for the children at Bridge House would place them at risk and not be appropriate.  This conclusion was supported by Mother's testimony that people brought drugs to Bridge House, there were overdoses there, and it was unsafe there for her and her children.

Mother did not "demonstrate[] the capacity and ability both to complete the objectives of [her] treatment plan and to provide for the child[ren's] safety, protection, physical and emotional well-being, and special needs."  (§ 366.21, subd. (g)(1)(C).)  At the time of the 12-month hearing, less than four months remained before the 18-month deadline.  The evidence did not establish that Mother would secure stable and safe housing for the children before this deadline.  Mother failed to comply with the rules of her housing by engaging in an altercation with another resident, using drugs, sneaking in a boyfriend, then spending a night away from Bridge House, resulting in her and the children becoming homeless.

Mother also violated the department's directives by choosing to associate with an individual with a history of drug use and domestic violence who posed a risk to her sobriety and the children's safety.  Mother and John H. were about to give birth to twins, and he would remain part of her life.  The juvenile court appropriately wondered how Mother would "somehow separate [the twins] from [John H.] and have visits with her children apart from [him]."  The juvenile court's finding is supported by a "pattern of instability, which included no permanent housing . . . and inappropriate choices of living partners."  (*In re John V.* (1992) 5 Cal.App.4th 1201, 1212; see *In re L.B.* (2023) 88 Cal.App.5th 402, 413 [homelessness is properly

considered if not the only factor].) Substantial evidence supports the juvenile court's conclusion that it was not substantially probable the children would be returned to Mother's custody and safely maintained in the home.

*Georgeanne G. v. Superior Court*, *supra*, 53 Cal.App.5th 856, upon which Mother relies, does not support writ relief here. There, our colleagues in Division 7 concluded that the mother residing with a man who had raped his prior wife did not establish a risk of danger toward the mother or the minor for purposes of returning the child to her custody (§ 366.21, subd. (f)(1)). (*Georgeanne G.*, at pp. 868-869.) The court noted that because Georgeanne reported to law enforcement an assault by a previous partner and obtained a restraining order against him, there was no "reason to believe, if violence were threatened, Georgeanne would be a passive victim and unable to protect" the child. (*Id*. at p. 869.) But here, Mother continued to see Rudy G. after he assaulted her in the presence of the children and she declined to obtain a protective order. She then entered an ongoing relationship with John H., who also had a history of domestic violence.

*Georgeanne G.* does not prohibit the court from considering the prior criminal and custody issues of a parent's companion when determining whether to continue reunification services. Mother had an ongoing relationship with John H. Despite the department's direction, Mother continued to allow him contact with the children. Substantial evidence supports the termination of reunification services.

### *Return of custody*

It is unclear whether the writ petition challenges the order declining to return the children to Mother's custody after the 12-month permanency hearing. (§ 366.21, subd. (f)(1).) At the

hearing, the department stated the contested issue was continuation of reunification services, and "[t]here has been no request or indication that the children be immediately placed with the mother at today's hearing." Mother did not dispute that assertion.

Because she did not raise the issue of immediate return of the children to her custody in the trial court, Mother has forfeited this argument. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)

*Conclusion*

"[I]n order to prevent children from spending their lives in the uncertainty of foster care, there must be a limitation on the length of time a child has to wait for a parent to become adequate." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 308.) Substantial evidence supports termination of reunification services for Mother and setting the case for a section 366.26 hearing.

DISPOSITION

The petition for extraordinary writ is denied. The request to stay the section 366.26 proceedings is denied.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

GILBERT, P. J.                    CODY, J.

9

Gustavo E. Lavayen, Judge

Superior Court County of Santa Barbara

_____


        Law Office of James C. Ames and James C. Ames for Petitioner.

        Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Deputy County Counsel, for Real Party in Interest.

        No appearance for Respondent.