Filed 1/4/24  C.S. v. Superior Court CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| C.S.,<br><br>    Petitioner,<br><br>v.<br><br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Respondent;<br><br><br>SAN FRANCISCO HUMAN SERVICES AGENCY et al.,<br><br>    Real Parties in Interest. | A168755<br><br>San Francisco County<br> Super. Ct. No. JD22-3227 |

**MEMORANDUM OPINION[1]**

In this juvenile writ proceeding, C.S. (mother) seeks extraordinary relief from the juvenile court's order terminating reunification services with respect to her young son Z.S. (born March 2022) and setting a permanency planning hearing pursuant to section 366.26 of the Welfare and Institutions

---

[1] We resolve this matter by memorandum opinion pursuant to the California Standards of Judicial Administration, standard 8.1.

Code.[2]  Mother argues that the juvenile court erred in failing to extend her reunification services for six additional weeks to the 12-month mark because she had made substantial progress with her services and there was a substantial probability that the minor could be returned to her care within this extended time frame.  Mother additionally claims that the juvenile court erred in failing to hear a section 388 petition filed in February 2023 by the San Francisco Human Services Agency (Agency) until the contested six-month review in September 2023 and that her attorney's failure to press the matter for earlier resolution constituted ineffective assistance of counsel.  We deny the petition.

## BACKGROUND

On August 28, 2022, mother was stopped by the police for driving erratically, failing to stop at stop signs and traffic lights.  The police determined that she was driving while intoxicated and without a license.  Moreover, Z.S. was not buckled into his car seat.  Father, who was also intoxicated, was in the car despite the existence of a five-year restraining order protecting mother and Z.S. from him based on a March 2022 incident of domestic violence.  Mother admitted she had been drinking and driving.  The Agency detained the minor at the police station after both parents were arrested.

The Agency had 30 previous referrals involving mother and her three children.  In April 2017, her two older children (E.S. and C.W.) were removed from her care after mother was arrested for child endangerment and resisting arrest.  Mother had been intoxicated and failed to seek medical care for one of

_____

[2] All statutory references are to the Welfare and Institutions Code unless otherwise specified.  S.C. (father) was raised to presumed father status on August 31, 2022, but is not involved in these writ proceedings.  We thus discuss him only to the extent relevant to mother's claims.

the children, who was having an acute medical concern. E.S.'s father was granted sole legal and physical custody of E.S. C.W. was adopted by the maternal grandmother in Texas. At the time of the recent incident, mother was involved in a domestic violence support group and had been participating in individual therapy since 2018.

The Agency filed a juvenile dependency petition on August 30, 2022, alleging that Z.S. was described by subdivisions (b)(1) and (g) of section 300 due to the August 28 incident, mother's substance abuse, the history of domestic violence between the parents, and mother's mental health issues. The minor was formally detained at the detention hearing on August 31, 2022.

In advance of the combined jurisdictional and dispositional hearing, the Agency reported that mother was not in residential treatment as she had been unable to complete intake at one program, had left another program in the first week, and had subsequently left a detox program, all due to her threatening behaviors and conflict with program staff. The social worker referred mother to an outpatient program. The Agency initially recommended that mother be bypassed for reunification services based on her previous history with the Agency, unaddressed trauma, and current struggles. However, it ultimately agreed to provide reunification services because mother was consistently testing negative and engaging in some services. At the combined jurisdictional and dispositional hearing on November 29, 2022, the parents submitted to amended allegations, and the juvenile court sustained the amended petition, finding the minor to be a person described by subdivision (b)(1) of section 300. The juvenile court declared the minor to be a juvenile court dependent and ordered reunification services for both parents.

Shortly thereafter, however, mother began a series of concerning behaviors. In December 2022, she made statements of self-harm and threats to others during outpatient treatment (" 'death by cop' " if her children were not returned and " '[i]f I don't have my kids, then they "CPS" want [sic] have their kids' "). During a visit later the same day, she threatened to burn down two Agency buildings. In January 2023, mother escalated at a visit while holding the minor to the extent that visitation had to be paused because she could not be safely contained by Agency staff. In February 2023, mother was banned from her drug testing site after she entered the facility, threw all of the office items in the lobby to the ground, and punched a specimen collector in the head 10 times with a closed fist. She also made additional statements about harming everyone, including the judge, involved in her dependency matters (" '[N]ot hard to find out where a person lives' " and " '[S]o how is this going to end, a blood bath' "). On February 28, 2023, the Agency filed a section 388 request to suspend mother's visitation given that she posed a safety risk to the child, others, and herself. The Agency also learned that on August 30, 2022, mother had stabbed father in the arm while she was intoxicated, causing a three-to-four inch laceration. On March 23, 2023, the juvenile court granted the Agency's request to suspend mother's visits pending further trial.

In its report for the six-month review hearing in May 2023, the Agency recommended that mother's reunification services be terminated because both parents continued to engage in unsafe behaviors. The Agency recounted mother's recent inability to control her emotions and its negative impacts on Z.S. Mother's limited releases of information impacted the Agency's ability to assess mother's mental health needs in the areas of her impulsivity, anger responses, interpersonal skills, and healthy relationship building. When

4

asked about her attack on the drug-testing employee, mother stated she did not regret it and it was deserved. Both parents continued to report ongoing harassment by the other parent. The Agency opined that mother had not been able to utilize services to learn new ways of coping and healthy reactions.

At a hearing on May 18, 2023, the six-month review was continued to August 14, 2023, and the Agency was given the discretion to implement supervised virtual visitation between mother and the minor. In June 2023, mother's attorney requested to be relieved, and the court granted the request. The next day, new counsel was appointed for mother and the case was transferred to another department after the current judge's recusal. The six-month hearing was set before the new judge on September 15, 2023. After a closed hearing on August 4, 2023, the court denied mother's *Marsden*[3] motion for new counsel.

In an addendum report, the Agency related that, since February 2023, mother had participated in 10-12 parenting classes out of the 25 needed for a certificate of completion, had been dismissed from class in July 2023 due to her behaviors, and was notified that she would be terminated if she continued to threaten staff. Mother sent obscene and threatening texts and emails to the provider demanding a certificate of completion. Mother's drug tests had been moved to a new provider in Oakland, and she missed 13 tests in May and June 2023. In July 2023, mother requested testing in San Francisco, and testing was switched to the last available San Francisco provider. Between July 27 and September 6, mother tested clean seven times and missed two tests, but the social worker was notified in early August that the facility would not continue to serve mother if her hostile conduct

[3] *People v. Marsden* (1970) 2 Cal.3d 118.

continued. Mother continued to refuse to sign releases so the social worker could speak with her long-term therapist and domestic violence service provider. Mother reported that she was participating in anger management through her pre-trial program, but the social worker determined that her case had been closed in May 2023. According to the pre-trial provider, mother came to the office demanding a certificate in August 2023. She became upset, destroyed the front office, threatened to shoot different employees, and was escorted out.

Nevertheless, the Agency had begun weekly virtual visits between mother and Z.S. on May 31, 2022. The visits themselves were generally positive, except for one occasion where mother became upset and used foul language in front of the minor. Mother sent threatening and abusive messages to both the visit technician and the social worker after the problematic visit. The Agency continued to recommend termination of reunification efforts, noting that mother had not been able to develop or exhibit consistent behavioral change and her mental health instability continued to threaten the minor's safety and emotional well-being.

After the contested six-month review hearing on September 14, 2023, the court terminated reunification services and set the matter for a permanency planning hearing pursuant to section 366.26 so that a permanent out-of-home plan could be established for Z.S. In doing so, the court noted that the social worker's most recent report provided "a very detailed explanation of the lack of behavioral change by [mother]." It also considered mother's request that her visitation be changed from the weekly supervised virtual visits now recommended by the Agency to in-person visits. The court ordered that the virtual visitation continue but gave the Agency

discretion to resume in-person visitation should mother show some "additional behavioral change."  Mother's timely petition followed.

## DISCUSSION

When a dependent child is removed from parental custody, the juvenile court ordinarily must order child welfare services for the minor and the parent for the purpose of facilitating reunification of the family.  (§ 361.5, subd. (a).)  For a child under three years of age at the time of removal, as is the case here, reunification services are presumptively limited to six months.  (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843.)  This is because the " ' "unique developmental needs of infants and toddlers" ' [citation] justifies a greater emphasis on establishing permanency and stability earlier in the dependency process."  (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 175.)  Reunification services may be continued to the 12-month hearing *only if* the juvenile court finds that there is a substantial probability that the child may be returned to his or her parent within the extended timeframe or that reasonable services have not been provided.  (§§ 361.5, subd. (A)(1), 366.21, subds. (e)(3) & (g)(1)(A-C).)

We uphold a juvenile court's findings supporting termination of reunification services if supported by substantial evidence.  (*J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 535.)  Here, the 12 months are measured from 60 days after the date Z.S. was initially detained (August 28, 2022), so the 12-month date would have been October 27, 2023.  (§§ 361.49, 361.5, subd. (A)(1), 366.21, subd. (e)(3).)  Thus, the question before us is whether substantial evidence supports the juvenile court's determination that their was no substantial probability that Z.S. could be safely reunified with mother in six weeks.

7

C.S. asserts in her writ petition that the juvenile court erred in refusing to extend her reunification services to the 12-month mark because she made significant progress in her case plan, engaging in numerous services. However, participation in services is not the relevant inquiry. Rather, as the juvenile court correctly articulated, the question is whether mother had demonstrated positive behavioral change— that is, whether she had made significant progress in resolving the problems that led to Z.S.'s removal and had demonstrated the capacity and ability to complete the objectives of her treatment plan in the six weeks remaining until a 12-month review. (See § 366.21, subd. (g)(1)(B) & (C).) The juvenile court concluded that she had not, and the evidence overwhelmingly supports this conclusion.

Mother's second contention—that the juvenile court somehow erred by failing to resolve the Agency's section 388 petition to modify her visitation in a timely manner and that her attorney was ineffective for failing to move to have it resolved before the six-month review—is easily dismissed. As stated above, the Agency filed its petition in February 2023, seeking to suspend mother's visitation due to her erratic and dangerous behaviors, and the court granted the request pending further hearing. However, the Agency had resumed weekly virtual visitation by May 2023, and the trial court gave the Agency discretion to resume in-person visitation at the six-month review, should mother show appropriate behavioral change, even though it otherwise terminated services. Visitation is always an ongoing issue in any dependency proceeding, and it was treated as such throughout this case. On this record, we cannot conceive how mother could possibly have been prejudiced by the failure to hold an earlier "trial" on the brief suspension of her visitation and/or her ongoing visitation orders.

8

## DISPOSITION

The petition is denied on the merits.  (See § 366.26, subd. (*l*)(1)(C), 4(B).)  Because the permanency planning hearing in this matter is set for January 10, 2024, this opinion is final as to this court immediately. C.S.'s request for a stay of the permanency planning hearing is denied.

GETTY, J.*

WE CONCUR:

HUMES, P. J.

BANKE, J.

A168755N

---

* Judge of the Solano County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.