Filed 6/16/25  Jose S. v. Superior Court CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| JOSE S. et al., | 2d Juv. No. B344518 |
| | (Super. Ct. No. 24JV00417) |
| Petitioners, | (Santa Barbara County) |
| v. | |
| THE SUPERIOR COURT OF SANTA BARBARA COUNTY, | |
| Respondent, | |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES, | |
| Real Party in Interest. | |

Jose S. (father) and Kimberly S. (mother) petition for extraordinary writ relief from the juvenile court's orders denying father's request to change a court order (Welf. & Inst. Code, §

388),[1] terminating mother's family reunification services (§ 366.21, subd. (f)), and setting the matter for a permanency planning hearing (§ 366.26).  We deny the petitions.

*Facts and Procedural Background*

In July 2023, Isaac M. was born prematurely at 25 weeks. He suffered serious health issues and was placed in the Neonatal Intensive Care Unit for three months following his birth.

In November 2023, Kern County Department of Human Services (DHS) secured a protective custody warrant to detain Isaac from mother's care after she failed to take Isaac to five scheduled medical appointments and did not reschedule.

At the detention hearing, the juvenile court detained Isaac after finding a prima facie case existed pursuant to section 300, and no reasonable means existed to prevent detention.

In December 2023, DHS prepared a jurisdiction and disposition report, recommending Isaac remain in out-of-home care and that parents be offered reunification services.  The juvenile court adopted the recommendations and ordered DHS to provide both parents with six months of reunification services.

In June 2024, at the six-month status review hearing, DHS reported that father's whereabouts were unknown and that he had made no progress in his case plan.  DHS recommended that father's services be terminated.  Mother's progress had been "moderate," and DHS recommended that she receive additional services based on the substantial probability that Isaac could be returned to her care within six months.  The juvenile court agreed and followed DHS's recommendations.

---

[1] All further statutory references are to the Welfare and Institutions Code.

In August 2024, DHS moved to transfer the case to Santa Barbara County after mother relocated to Santa Maria where Isaac was living with maternal aunt. The Santa Barbara County Juvenile Court accepted transfer and ordered a revised case plan as recommended by Santa Barbara Child Welfare Services (CWS).

In December 2024, CWS filed a status review report for the 12-month permanency hearing, recommending that mother's services be terminated and the section 366.26 hearing be set. CWS reported that after mother relocated to Santa Maria, she and father continued to live together and engage in domestic violence. The report further indicated that law enforcement had responded to parents' residence on three occasions for domestic-violence related issues. In October 2024, Isaac's three older siblings were detained due to parents' "chronic and ongoing domestic violence," which occurred in the presence of the children.[2]

CWS also reported that mother had not met her case plan objectives. For example, mother failed to consistently attend visits with Isaac, did not attend his medical appointments, failed to maintain a stable and suitable residence, and failed to regularly attend domestic violence education and parenting classes. CWS concluded that mother had not made significant progress in addressing the concerns that led to Isaac's removal.

---

[2] On April 14, 2025, CWS filed a motion to augment the record on appeal to include a set of police reports, dated November 8, 2024, which were filed in Isaac's siblings' cases (i.e., 24JV00430, 24JV00431, 24JV00432). The juvenile court took judicial notice of those cases and expressly referenced the law enforcement reports when making its ruling in this case. We will therefore grant CWS's request to augment the record.

In February 2025, CWS filed an addendum report for the 12-month hearing. CWS reported that mother had recently completed the domestic violence and parenting classes and had visited with Isaac regularly since November 2024. However, she had not attended any medical appointments throughout the review period and continued to live with father. When the social worker asked mother why she continued to reside with father despite ongoing domestic violence, which had also resulted in the detention of her other children, mother stated, "'I'm pretty sure he is learning.'"

In January 2025, father filed a section 388 petition requesting reunification services based on his recent engagement in services. He also indicated that he was participating in reunification services with Isaac's siblings and would like to reunify with Isaac as well.

The juvenile court found father's petition insufficient to warrant an evidentiary hearing because father's circumstances were "changing" rather than "changed." The juvenile court also found that the petition did not indicate how the requested services would be in Isaac's best interests.

At the contested 12-month hearing, mother and the social worker testified. Mother acknowledged she had not attended any of Isaac's medical appointments but explained that nobody "told [her] about that." She testified that her circumstances had improved since she moved to Santa Maria because her family lived there, and she could more easily get rides to Isaac's medical appointments.

On cross-examination, mother denied there was an issue with domestic violence in the home but admitted she agreed with CWS that father should not be around the children due to his

ongoing domestic violence issues and untreated substance abuse. She also admitted that the department had told her on numerous occasions that her decision to continue to live with father would keep her from getting Isaac back into her care.

The social worker testified that, based on the history of the case, she did not believe mother would be able to safely care for Isaac by the 18-month review hearing.

After recessing to review the record, including the matters related to the siblings' cases, the juvenile court found returning Isaac to mother would be harmful to him, and that mother had not resolved the issues that were creating a risk. The juvenile court expressly considered "the domestic violence issues which seem to be continuing." The juvenile court also noted that mother was still living with father, did not appear to have gained a lot of understanding as to what led to the removal of Isaac, and continued to minimize the problems and risks to the children.

The juvenile court terminated mother's reunification services and set a hearing pursuant to section 366.26.

After the juvenile court's ruling, father and mother filed petitions for extraordinary writ challenging the juvenile court's orders. The petitions contain limited information. For example, mother's petition states, "They said I didn't do enough when I think I did." Father's petition states, "I already had Programs done. I was attending them."

*Denial of Father's Section 388 Petition*

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child." (*In re Zachary G.* (1999) 77

Cal.App.4th 799, 806; *In re Stephanie M.* (1994) 7 Cal.4th 295, 316-317 (*Stephanie M.*).) The petitioner need only make a prima facie showing of these two elements to trigger the right to a hearing and the petition should be liberally construed in favor of granting a hearing to consider the parent's request. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309-310.)

However, the prima facie requirement is not met if the allegations would fail to sustain a favorable decision even if they were found to be true at a hearing. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157.) "In determining whether the petition makes the necessary showing, the [juvenile] court may consider the entire factual and procedural history of the case." (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.)

We review the juvenile court's determination that father's petition did not warrant an evidentiary hearing for abuse of discretion. (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250; *In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1450.) We will not disturb the trial court's decision unless it "'exceeded the bounds of reason. . . .'" (*Stephanie M., supra*, 7 Cal.4th at pp. 318-319.)

Father's petition alleged changed circumstances because he had attended all court hearings in Santa Barbara County, completed the Batterer's Intervention Program, attended 15 Alcoholics Anonymous (AA) meetings, participated in drug counseling and parenting classes, and had been testing clean for approximately one month. The only documentation attached to the petition was a letter from father's outpatient treatment program, indicating that he had enrolled in services and was participating in counseling sessions and random drug testing.

Even if father's allegations were found to be true, they did not make a prima facie showing of changed circumstances.

6

Indeed, the record reflects that father has previously completed a court-ordered anger management/batterer's intervention program, yet he continued to engage in domestic violence with mother as recently as three months prior to the filing of his section 388 petition.

The record also reflects that father's recent engagement in services corresponds with his court-ordered probation for pleading guilty to exhibiting a deadly weapon for which he was sentenced to probation and participation in AA meetings.

On these facts, we conclude the juvenile court did not abuse its discretion in finding father's circumstances were "changing" but not changed. Because father did not make a prima facie showing of changed circumstances, we need not address the second prong, whether the proposed change is in Isaac's best interests.

*Termination of Mother's Reunification Services*

Where, as here, a child is under three years of age at the time of removal, reunification services are presumptively limited to six months. (§ 361.5, subd. (a)(1)(B); *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843.)

At the conclusion of the 12-month review hearing, the juvenile court shall continue the case for up to six months if there is a "substantial probability" a child will be returned to a parent's custody. (§ 366.21, subd. (g)(1).) In order to find a substantial probability of return to a parent, the juvenile court must find (1) the parent has "consistently and regularly contacted and visited the child," (2) "made significant progress in resolving problems that led to the child's removal from the home," and (3) "demonstrated the capacity and ability . . . to complete the objectives of [the] treatment plan and to provide for the child's

7

safety, protection, physical and emotional well-being, and special needs." (*Id.*, subd. (g)(1)(A)-(C).)

We review an order terminating reunification services for substantial evidence. (*J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 535.)

Here, at the six-month review hearing, the juvenile court ordered an additional six months of services for mother. However, by the 12-month review hearing, CWS was unable to recommend additional services because there was not a "substantial probability" that Isaac would be able to return to mother's care by the 18-month review, which was set to occur just three months later.

We conclude substantial evidence supports the juvenile court's findings that Isaac could not be returned safely to mother, as mother had not made significant progress in resolving the issues that led to Isaac's detention, and there was not a "substantial probability" that Issac would be returned to mother within three months.

The record reflects that CWS made numerous attempts to contact mother after her case was transferred to Santa Barbara County but mother was not responsive. When the social worker scheduled a time to meet with mother to review her case plan after a scheduled visit with the children, mother left the visit early without notifying the social worker and did not reschedule the appointment. "The requirement that reunification services be made available to help a parent . . . is not a requirement that a social worker take the parent by the hand and escort him or her to and through" those services. (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn. 5.)

Isaac was initially detained from mother's custody based on her failure to provide adequate medical care. Yet, mother made no effort to attend any of Isaac's medical appointments in Santa Barbara County and blamed the department for her failure to do so. Isaac remained detained based on parents' "chronic and ongoing" domestic violence issues, which resulted in the removal of Isaac's three older siblings during the pendency of this case. As the juvenile court opined, it "just seems to be the continuation of the same problems that led to the removal of the children." (See *M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 181 ["the court may take all of the evidence into consideration" in determining substantial probability of return].)

*Disposition*

We deny the petitions for extraordinary writ.

<u>NOT TO BE PUBLISHED</u>.


                                        YEGAN, Acting P. J.


We concur:



        BALTODANO, J.



        CODY, J.


9

Gustavo E. Lavayen, Judge
Superior Court County of Santa Barbara
_____

Jose S. and Kimberly S., in pro. per, for Petitioners.

No appearance for Respondent.

Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Sr. Deputy County Counsel, for Real Party in Interest.