Filed 11/13/25  In Ne.L. CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re Ne.L. et al., Persons Coming Under the Juvenile Court Law. | H053000 (Santa Cruz County Super. Ct. Nos. 23JU00145, 23JU00146, 23JU00147) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. N.L., Defendant and Appellant. | |

Appellant N.L. (Mother) challenges the juvenile court's 12-month status review orders extending reunification services.  Mother contends that the juvenile court erred in finding she made minimal progress in her case plan and that returning her youngest child, Na.L., would create a substantial risk of detriment.[1]  We affirm.

---

[1] Although Mother's notice of appeal identified all three children's orders, she clarified in her opening brief that she challenges only the order concerning the youngest sibling, Na.L.  Mother raises no arguments regarding the other children.  Accordingly, we dismiss as abandoned the appeal from the orders concerning Ne.L. and No.L.  (See *In re Sade C.* (1996) 13 Cal.4th 952, 994.)

# I. FACTUAL AND PROCEDURAL BACKGROUND[2]

The juvenile court ordered Mother's three children, Ne.L. (born 2009), No.L. (born 2010), and Na.L. (born 2015), detained and placed with maternal grandmother after Ne.L. was found with bruising to her eyes and a hematoma on her head. Respondent Santa Cruz County Human Services Department (the Department) had received referrals about the impact of Mother's mental health on the children. Mother also had a history of methamphetamine use. At the jurisdiction and disposition hearing, the juvenile court ordered family reunification services for Mother. The court also ordered Mother to participate in the Department's case plan, which included a psychological evaluation, a substance use disorder assessment, counseling, and random drug testing. In appeal number H052009, Mother appealed the jurisdictional and disposition orders regarding Na.L., which we affirmed.

Mother completed the psychological evaluation and was diagnosed with generalized anxiety disorder. Her responses in the evaluation demonstrated characteristics such as grandiosity, defensiveness, and difficulty with emotional regulation but also showed that she was able to think about complex issues. The juvenile court granted the Department's request to add the doctor's recommendations to the case plan. The updated case plan required Mother to complete individual and family therapy, attend parenting classes, and obtain housing support and substance use treatment. Mother obtained housing in San Mateo County. At the contested six-month review hearing, the

---

[2] Our unpublished opinions in Mother's prior appeals of the jurisdiction and disposition orders and six-month status review orders provide additional background of the proceedings in this dependency matter. (*In re Ne.L. et al.; Santa Cruz County HSD v. N.L.* (Dec. 11, 2024, H052009) [nonpub. opn.]; *In re N.C. et al.; Santa Cruz County HSD v. N.L.* (Aug. 12, 2025, H052794) [nonpub. opn.].) We take judicial notice of those unpublished opinions. (See *ZF Micro Devices, Inc. v. TAT Capital Partners, Ltd.* (2016) 5 Cal.App.5th 69, 73, fn. 3 [appellate court may take judicial notice of its prior unpublished decision].) We recite where necessary information from our earlier opinions to resolve this appeal.

juvenile court found that Mother made minimal progress toward alleviating or mitigating the causes necessitating the children's placement with maternal grandmother. The juvenile court also determined by a preponderance of the evidence that returning the children to Mother would create a substantial risk of detriment to their safety and well-being. The court ordered family reunification services be continued. In appeal number H052794, Mother appealed the six-month review order concerning Na.L., which we affirmed.

**A.** *Progress Before the 12-Month Review Hearing*

**1.** *Mother's Counseling*

According to the Department's 12-month review report, Mother told the Department that she worked with a Kaiser Permanente counselor and a life coach. She began individual therapy with a therapist over two months before the Department's report. The Department had difficulty assessing therapy's impact on Mother and her goals because as of the report, Mother had not provided a release of information for any provider about her child welfare therapeutic goals. Despite Mother's participation in therapy, the Department did not observe a behavioral change that suggested she could safely parent her children without oversight. It characterized Mother's interactions with the Department as "combative" with "frequent disagreement."

**2.** *Relationship with Children*

The Department reported that Mother faced challenges parenting her children. Mother blamed her eldest child, Ne.L., for the family's circumstances. During a family meeting, Ne.L. stated that she did not want to attend family therapy with Mother. The assigned social worker commended Ne.L. for speaking her mind. After the meeting, Mother called the social worker and expressed anger that the social worker supported Ne.L. at the meeting. Mother also told the social worker that Ne.L., whose physical injuries had caused the children to be removed from Mother, lied about her. Mother described maternal grandmother and Ne.L. as enemies conspiring against her. An

3

incident with Mother occurred about a month prior to the Department's 12-month review report. Mother visited the children at maternal grandmother's home. Maternal grandmother asked her to leave because it was the children's bedtime. Mother refused to leave and became upset. Maternal grandmother told the Department that Mother blamed Ne.L. and accused Ne.L. of lying to social workers. Ne.L. called law enforcement. After law enforcement arrived, Mother left the home. Ne.L. told the Department that she and her brothers must remain with maternal grandmother.

The middle child, No.L., informed the Department that he enjoyed some visits with Mother. Mother was a strong advocate for No.L.'s educational needs and attended his individualized education plan meetings. However, he occasionally refused to see Mother because she was "too emotional." He also felt she favored Na.L., the subject of this appeal. No.L. told the Department that Mother's behavior had not changed and she was still emotionally volatile.

Na.L. enjoyed being with Mother and hoped to live with her again. The Department reported that Mother and Na.L. had positive visits. When visiting Na.L. and No.L., she incorporated enjoyable activities, such as outdoor outings. Na.L. also expressed concern that Mother would prevent him from seeing maternal grandmother as she did before. He feared Mother would become angry if he stated his desire to see his paternal relatives. Ne.L. informed the Department that Na.L. would become angry in maternal grandmother's home because Mother told Na.L. that he would live with her again and did not have to listen to maternal grandmother's rules. Family members also told the Department that Mother's comments caused Na.L. emotional distress.

The Department reported that Mother did not provide evidence that she completed parenting classes. Mother inquired about sessions with a parenting coach but did not provide verification that sessions had commenced.

The Department concluded that the risk of returning the children to Mother's care was high. It noted that Mother did not always comply with her case plan's objectives.

4

She continued behaving in ways that brought her to the juvenile court's attention and minimized the severity of the concerns that led to the children's removal. Mother also exhibited limited insight into how her behavior impacted her children. She attributed the issues with her older children primarily to their adolescence. The Department opined that Mother rarely acknowledged the impact of other significant factors, including incidents the children experienced while living with her. The Department reported that Mother attempted to manipulate the siblings by favoring Na.L. and creating division among the children. Mother continued exhibiting heightened anxiety, especially with Na.L., which escalated family tensions.

The Department recognized Mother's periods of improvement, noting that she started therapy and maintained her sobriety. Mother also expressed that she wanted her children to be happy. With consistent therapy and self-reflection into the causes of the dependency proceedings, the Department opined that Mother could reunify with her children within the next six months. The Department also noted that "[Mother] believe[d] she need[ed] six more months of reunification and to [receive] services in her county of residence in order to successfully reunify."

### 3. *Substance Use*

The Department reported that Mother made some progress with her case plan's substance use objective. Mother completed a substance abuse disorder assessment and did not meet the criteria for a disorder. She did not require treatment, and she reported that she was not using illegal substances. However, Mother did not consistently complete mandated drug tests. Of the tests she completed, she tested negative for substances other than marijuana. She also did not complete an ordered hair follicle test.

### B. *12-Month Review Hearing*

Mother's counsel submitted on the Department's 12-month review report and a letter from Mother. Mother stated in her letter that she wanted the court to continue maintenance services until an 18-month review hearing. Mother's counsel also said that

Mother would continue participating in the case plan and was "hopeful . . . [for] reunification soon in her other county [of] residence." The day before the hearing, Mother submitted verification of her enrollment in a 12-week parent education and family stabilization course. Mother expressed gratitude for the case plan. Adopting the Department's recommendations for continued reunification services, the juvenile court found that Mother's progress towards alleviating or mitigating the causes necessitating placement in foster care was minimal but acknowledged her efforts. The juvenile court also determined by a preponderance of the evidence that returning the children to Mother would create a substantial risk of detriment to their safety, protection, or physical or emotional well-being.

Mother timely appealed.

## II. DISCUSSION

Mother contends the juvenile court erred in finding that Mother made minimal progress in her case plan and that returning Na.L. to her care would create a substantial risk of detriment. The Department asserts Mother forfeited her arguments by submitting on the Department's recommendation. The Department also maintains that substantial evidence supports the juvenile court's findings. Although we determine that Mother has not forfeited her arguments, our review of the record does not support Mother's contentions.

### A. *Mother Has Not Forfeited Her Arguments*

"As a general rule, a party is precluded from urging on appeal any point not raised in the trial court." (*In re Richard K.* (1994) 25 Cal.App.4th 580, 590.) "Dependency matters are not exempt from this rule. [Citations.]" (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, superseded by statute on another ground as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962.) However, "a parent who submits on the reports in evidence does not forfeit the right to appeal the juvenile court's orders. . . . Only when a parent submits on a social worker's recommendation does he or she forfeit the right to contest

6

the juvenile court's decision if it coincides with that recommendation. [Citation.]" (*In re T.V.* (2013) 217 Cal.App.4th 126, 136.)

We hold that Mother has not forfeited her arguments. At the review hearing, Mother and counsel made statements suggesting both Mother's acquiescence to reunification services and hope for family maintenance services. In its 12-month review report, the Department reported that "[Mother] believe[d] she need[ed] six more months of reunification and to [receive] services in her county of residence in order to successfully reunify." At the hearing, Mother did not contest this statement. However, in her letter to the juvenile court, she wrote that "[f]urther accomplishment [would be] a ruling of continued services to [an] 18[-]month review hearing, family *maintenance* with continued services for [Na.L.]." (Emphasis added.) This suggests Mother desired family maintenance services with Na.L. rather than family reunification services. At the 12-month review hearing, Mother's counsel stated that Mother was submitting on the Department's report. However, counsel also stated that "[Mother was] hopeful . . . [for] *reunification soon* in her other county [of] residence." (Emphasis added.)

In *Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 813, the appellate court found that "[b]ecause of [the appellant's] counsel's mixed message" of submitting on the department recommendation but taking "exception [with] the court's finding of reasonable services," the appellant did not forfeit her arguments. As in *Steve J.*, Mother's counsel here presented a "mixed message" by stating that Mother submitted on the report recommending reunification services but also that Mother was hoping to reunify with the children soon. (*Ibid.*) Although Mother expressed gratitude for her case plan at the hearing, she did not retract her written statement that she desired family maintenance services for Na.L. Considering Mother's letter and her counsel's conflicting statements,

we conclude that Mother has not forfeited her challenges to the 12-month review order. (*Ibid.*)

## B. *No Error in the Juvenile Court's Minimal Progress Finding*

Mother asserts the juvenile court erred in its minimal progress finding because she completed a substance abuse and psychological assessment, participated in parenting education, worked with a parenting coach, visited with her children as allowed by court order, enrolled in individual counseling, and secured housing in San Mateo County. We review the juvenile court's minimal progress finding for substantial evidence. (See *J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 535 (*J.H.*).) Evidence is substantial if it is " 'reasonable, credible and of solid value. [Citation.]' [Citation.]" (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1424.) "We resolve all conflicts in favor of the court's determinations, and indulge all legitimate inferences to uphold its findings. [Citation.]" (*J.H.*, at p. 535.) It is the appellant's burden to establish the evidence is insufficient to support the juvenile court's findings. (See *In re A.G.* (2017) 12 Cal.App.5th 994, 1001.)

Mother's case plan required her participation in psychological and substance use disorder assessments, drug testing, individual and family therapy, and parenting classes. She was also required to obtain housing support and substance use treatment. Substantial evidence supports the juvenile court's minimal progress finding. We acknowledge that Mother completed the psychological and substance use disorder assessments and obtained housing in San Mateo County. Mother also did not require substance use treatment because she was not diagnosed with a substance use disorder.

However, Mother did not complete all portions of her case plan, particularly those aspects of the plan designed to protect the children from her substance use and unstable mental health. These were the bases for the children's removal. Despite her history of methamphetamine abuse, she did not fully comply with her drug testing requirements during the 12-month period. The record does not support her assertion that she was no

8

longer required to participate in any drug testing after the substance use disorder assessment. She also did not complete a hair follicle test as requested. Although Mother commenced therapy over two months prior to the 12-month review hearing, the Department was unable to assess therapy's impact on her goals because she did not provide a waiver for any provider to share information. The Department did not observe any behavioral change with Mother since she started therapy. Further, although she inquired about parenting education, she did not provide the Department verification of her attendance in a parenting program or work with a parenting coach. Mother filed a certification of her enrollment in a parenting course only the day before the 12-month review hearing. In short, she provided no consistent support for the court to conclude at the time of the hearing that she was consistently sober, and sufficiently emotionally stable to take custody of the children.

Mother contends that substantial evidence does not support the juvenile court's finding because she made progress on her case plan and demonstrated parental insight, in contrast to the appellant in *J.H.*, *supra*, 20 Cal.App.5th at pages 535-536. In *J.H.*, the appellate court found substantial evidence supported termination of reunification services after the 12-month review hearing because the father was hostile toward social workers and had a history of domestic violence but declined to participate in therapy. (*Ibid.*) The father "neither made significant progress in resolving the problems that led to his daughters' removal from the home nor demonstrated his capacity to complete the objectives of the case plan." (*Id.* at p. 535.)

But here, as in *J.H.*, the Department reported Mother exhibited combative behavior towards social workers. Mother's mental health and emotional regulation issues—the cause of the dependency proceedings—were not resolved despite her participation in therapy. No.L. reported to the Department that Mother was too emotionally volatile to have custody of the children. Mother's refusal to leave maternal grandmother's home until law enforcement arrived confirmed that assessment. Mother

9

also continued to blame Ne.L. for the dependency proceedings, and accused Ne.L. and maternal grandmother of conspiring against her. Instead of acknowledging her parenting role, Mother attributed her damaged relationship with the older children on their adolescence. The Department reported that Mother minimized the incidents that arose while the children lived with her and that resulted in their removal. On balance, although the Department believed Mother could achieve reunification in six months given her partial compliance with previous court orders, it noted that she had not yet completed significant aspects of her case plan that were critical to the safety of the children.

For these reasons, we determine that substantial evidence supports the juvenile court's minimal progress finding.

### C. *No Error in the Juvenile Court's Detriment Finding*

Mother also asserts that substantial evidence does not support the juvenile court's detriment finding. A dependent child must be returned to their parent's physical custody at the 12-month status review hearing unless the juvenile court finds by a preponderance of the evidence that return would create a substantial risk of detriment to the child's safety, protection, physical or emotional well-being. (Welf. & Inst. Code, § 366.21, subd. (f)(1).) We review the juvenile court's detriment finding for substantial evidence. (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763 (*Angela S.*).) The substantial risk standard does not mean " 'the parent in question is less than ideal, did not benefit from the reunification services as much as we might have hoped, or seems less capable than an available foster parent or other family member.' [Citation.]" (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400 (*Yvonne W.*).) The standard requires a more particular showing that "returning a child to parental custody represents some danger to the child's physical or emotional well-being. [Citations.]" (*Ibid.*)

The juvenile court based its detriment finding on the Department's report that Mother's failure to fully address her mental health issues and lack of parental insight were detrimental to Na.L. Mother contends that she demonstrated parental insight

10

because she understood her children's individual needs and worked on her case plan. Mother also expressed concern with the weight the juvenile court gave to the Department's opinion that she lacked parental insight.

While Mother recognized her children's individual needs, Mother's inability to resolve her issues harmed Na.L.'s emotional well-being. Family members explained that Mother's statements that Na.L. did not have to listen to maternal grandmother and would live with Mother soon caused Na.L. to exhibit anger in maternal grandmother's home. Despite Mother's positive visits with Na.L., Na.L. feared Mother would prevent him from seeing maternal grandmother and worried about her reaction if he told her that he wanted to see his paternal relatives.

The juvenile court properly weighed the Department's opinion that Mother's lack of parental insight would create a substantial risk of detriment to Na.L. Mother's reliance on *Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856, 869 (*Georgeanne G.*) is unpersuasive. In *Georgeanne G.*, the Department expressed concern that the appellant's partner would harm the appellant or her child because he had a domestic violence conviction with a different victim. (*Id.* at p. 868.) The appellate court found the Department's concern unsupported because the appellant's partner never harmed the appellant or her child, and the appellant completed a domestic violence program for victims. (*Id.* at pp. 868-869.) The appellate court also determined that the Department's concern that the appellant would violate a no-contact order between her partner and child was speculative. (*Id.* at p. 869.) The court noted that the appellant attested that she would follow future orders and understood the importance of complying with court orders restricting contact between her partner and child. (*Id.* at p. 870.) However, although the appellate court found that the Department failed to present substantial evidence that returning the appellant's child would create a substantial risk of detriment, the court also concluded that a parent's lack of insight may be considered by the juvenile court when assessing whether a child may be safely returned home. (*Id.* at pp. 865-868.)

11

Here, the Department did not speculate. Rather, the social workers' interactions with Mother, her children, and her relatives supported the Department's opinion that returning the children to Mother, including Na.L., would be detrimental to them. Further, Mother submitted on the Department's report. She did not dispute the Department's description of her conduct. No.L. observed that Mother's emotional and behavioral state had not changed. Mother showed favoritism towards Na.L. to the detriment of No.L.'s emotional well-being. Mother blamed Ne.L. during the incident in maternal grandmother's home. Additionally, Mother expressed anger towards a social worker because the social worker commended Ne.L. for stating her thoughts at a family meeting. Mother's failure to understand her actions' impact on her children directly affected Na.L.'s emotional safety. Mother's statements to Na.L. undermining grandmother's authority and promising that he would live with Mother soon caused his behavioral issues at maternal grandmother's house. In short, the Department's opinion was "not merely written in a conclusory fashion" but was "corroborated by [Mother's] specific acts of conduct." (*Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 692.)

Mother's failure to regularly participate in her case plan's therapeutic goals to address her mental health and emotional regulation further supported the juvenile court's detriment finding. (See *Yvonne W.*, *supra*, 165 Cal.App.4th at p. 1400 ["In evaluating detriment, the juvenile court must consider the extent to which the parent participated in reunification services. [Citations.]"].) As stated *ante*, Mother's case plan required her participation in therapy and parenting classes. Although Mother maintains that she used her service providers appropriately, she commenced therapy only a few months before the 12-month review hearing, provided no means for the Department to confirm her progress, and provided evidence of her enrollment in parenting classes the day before the hearing. (See *Angela S.*, *supra*, 36 Cal.App.4th at pp. 763-764 [finding in part that the appellant's failure "to meaningfully address the conditions that brought her children" to the juvenile court's attention and the appellant's "projection of blame onto others"

12

supported the court's detriment finding].) Mother's failure " 'to comply with material aspects of the service plan . . . [was] enough to support a finding of detriment.' " (*M.G. v. Superior Court* (2020) 46 Cal.App.5th 646, 660.)

### D. *Conclusion*

We acknowledge that Mother has made progress in addressing the challenges that caused the removal of her children. Family preservation is a priority in juvenile dependency proceedings, and Mother's love for Na.L. is clear. But here our task is to determine whether substantial evidence supports the juvenile court's order finding that returning Na.L. to Mother would create a substantial risk of detriment to his emotional safety or well-being at the 12-month status review. (See *Angela S.*, *supra*, 36 Cal.App.4th at p. 763.) Based on our careful review of the record under the relevant standard of appellate review, we are compelled to affirm the juvenile court's order.

### III.    DISPOSITION

The January 30, 2025 order from the 12-month review hearing concerning Na.L. (Case No. 23JU00147) is affirmed. The appeal from the orders regarding Ne.L. (Case No. 23JU00145) and No.L. (Case No. 23JU00146) are dismissed as abandoned.

_____
Greenwood, P. J.

WE CONCUR:


_____
Danner, J.


_____
Kulkarni, J.*


H053000 - In re Ne.L. et al.; Santa Cruz County HSD v. N.L.

_____
        * Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.